568 A.2d 1352

**AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, DISTRICT COUNCIL 88, AFL–CIO, Appellant,**

v.

**CITY OF READING, Appellee.**

Commonwealth Court of Pennsylvania.

Argued Sept. 14, 1989.

Decided Jan. 18, 1990.

Alaine S. Williams, with her, Lionel Rigler, Kirschner, Walters and Willig, Philadelphia, for appellant.

David A. Binder, Asst. City Sol., with him, Jack A. Linton, City Sol., for appellee.

Before McGINLEY and SMITH, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

The American Federation of State, County and Municipal Employees (Union) appeals from an order of the Court of Common Pleas of Berks County (court), which vacated an arbitrator's award ordering the City of Reading (Employer/City) to reinstate Dennis Schmehl (Grievant) and make whole for all lost wages and benefits from December 18, 1986. The court ruled that the arbitrator's award failed to draw its essence from the collective bargaining agreement (agreement) of the Union and the City. The issue before the arbitrator was whether the Grievant was discharged

without just cause. We reverse and reinstate the award of the arbitrator.

The Union and the Employer, as relevant to this case, were parties to the agreement, effective January 1, 1986, through December 31, 1986. Article 21 of the agreement sets forth a grievance procedure with the fourth and final step providing for the right of arbitration if the grievance is not settled. The Grievant was suspended on December 18, 1986, and discharged on January 21, 1987. The discharge grew out of the Grievant's conduct on December 17, 1986, allegedly being intoxicated, sleeping while on duty, insubordination and failing to perform his assigned work.

An arbitration hearing was held before the arbitrator, who sustained the grievance that the Grievant was discharged without just cause. The arbitrator found that the Grievant was scheduled to work the 7:00 a.m. to 3:00 p.m. shift on December 17, 1986, in his capacity as a Water Plant Operator for the City. On December 18, 1986, the Grievant was suspended indefinitely by the City, alleging that the Grievant was intoxicated on the job, sleeping while on duty and insubordinate because of his failure to perform a work task. Initially, the supervisor observed that the Grievant was sleeping on duty. However, upon further observation, he was led to believe that the Grievant was intoxicated, whereupon he requested the Grievant's immediate supervisor to be a witness. Grievant's immediate supervisor claimed he was unable to tell whether there was any indication that the Grievant was intoxicated and he could not detect the odor of alcohol on his breath. Also, when the Grievant reported to work, he had talked with the employee he was relieving who was requested by the supervisor on December 18, 1986 to report whether in his opinion the Grievant appeared to be intoxicated the previous morning. He replied he did not think so, nor did he smell alcohol on his breath, nor did he notice the Grievant slurring his words or that he appeared glassy-eyed.

On December 18, 1986, Grievant met with the personnel director. As a result of the meeting, he was issued a letter

charging that, because of his conduct of December 17, 1986, he would be suspended based on his receiving ten demerits as provided under the City's policy. Subsequent to the December 18, 1986 meeting, the City's personnel director, after meeting with the City's Council, agreed to terminate the Grievant. When the City advised the Union of its decision to terminate the Grievant, the Union persuaded the City to delay his termination indefinitely until the Union representative could persuade the Grievant to enter into an alcohol treatment program. The City agreed, whereupon the Grievant was assured of payment for the alcohol treatment program under the City's Blue Cross/Blue Shield coverage. Not long after the Grievant entered and completed the treatment program, the City carried out its termination of the Grievant on approximately January 21, 1987.

The arbitrator concluded that there was ample credible evidence that the Grievant was *probably* intoxicated or suffering its effects on December 17, 1986 while on the job. However, he also emphasized that the Grievant's immediate supervisor testified that he could not confirm the supervisor's finding that the Grievant was drunk, nor could he detect the odor of alcohol or any other evidence of intoxication.

The Union set forth two reasons before the arbitrator for finding that no just cause existed for the Grievant's termination. Firstly, there was a question of disparate treatment as applied to Grievant. The Union argued that in the many other cases of employees who had alcohol-related problems on the job, they were not discharged. Rather, they were permitted to seek treatment and were put back on the job. Secondly, the Union contended that the Grievant was harshly and improperly treated as an alcoholic, particularly since the City knew of his problem as early as January 1987 when he entered and completed treatment at an alcohol treatment center. The arbitrator found that one could reasonably conclude that an employee of Grievant's twelve-year service could have been accorded more liberal

treatment despite his alleged intoxication and failure to seek treatment before December 1986.

The City argued that the arbitration award was improper because 1) the arbitrator exceeded his authority in going beyond the submission of the grievance; 2) the arbitrator exceeded his authority by granting a responsibility on the part of the City where none exists under the agreement; 3) the decision was arbitrary and capricious; and 4) the decision failed to draw its essence from the agreement. The trial court relied only on the fourth argument, concluding that the arbitrator's award did not draw its essence from the agreement. Accordingly, the court did not address the City's other three arguments. We address only the issue considered by the court.

The court reasoned, accepting as true that other employees were not discharged for alleged intoxication, nonetheless, that there was no policy set forth in the agreement, or otherwise, mandating special treatment for intoxicated persons, but that every case was considered on its own merits. Further, the court concluded that the City's alleged past practices were not controlling unless specifically set forth in the agreement. The court noted that no provision of the agreement provided that the City make available some kind of employee assistance for intoxication treatment, and that the City's decision to hold off the discharge of the Grievant until he did admit himself into an alcohol treatment program was done solely for the Grievant's benefit to insure payment under the Blue Cross/Blue Shield program. For the foregoing reasons, the court concluded that the arbitrator's award did not draw its essence from the agreement and it therefore vacated the award.

## DISCUSSION

The starting point of our analysis is the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101–1101.2301 (Act 195). Section 903 of Act 195, 43 P.S. § 1101.903, is indicative of the legislature's interest in promoting collective bargaining which ends with

all grievances being resolved not by strikes, boycotts or lock-outs, but through a grievance procedure, with the last step of arbitration to be taken by either party to the agreement. According to Section 903, the policy in this Commonwealth not only favors, but mandates, the submission to arbitration of public employee grievances arising out of the interpretation of the provisions of a collective bargaining agreement. Arbitration is particularly favored in view of our crowded court dockets. *Mendelson v. Shrager*, 432 Pa. 383, 248 A.2d 234 (1988). The settlement of labor disputes through arbitration is particularly favored because it is "part and parcel of the collective bargaining process itself." *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 578, 80 S.Ct. 1347, 1350–51, 4 L.Ed.2d 1409 (1960).

■ The scope of review of an arbitrator's decision is highly circumscribed and that decision will not be overturned if it draws its essence from the collective bargaining agreement.[1] *Leechburg Area School District v. Dale*, 492 Pa. 515, 424 A.2d 1309 (1981); *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty (PSEA/NEA)*, 473 Pa. 576, 375 A.2d 1267 (1977); *Garnet Valley Service Personnel Association v. Garnet Valley School District*, 128 Pa.Commonwealth Ct. 182, 563 A.2d 207 (1989).

■ We are confined under the essence test to a determination of whether the arbitrator's decision could rationally be derived from the collective bargaining agreement, viewed in light of its language, its context and any other indicia of the parties' intention. The court may not review the arbitrator's decision on the merits, nor may the court substitute its judgment for that of the arbitrator. *See Pennsylvania Liquor Control Board v. Independent State Stores Union*, 520 Pa. 266, 553 A.2d 948 (1989) (*PLCB*);

---

1. The essence test is the standard of review for arbitration awards subject to Section 7302(d)(2) of the Uniform Arbitration Act (Uniform Act), 42 Pa.C.S. § 7302(d)(2). *County of Centre v. Musser*, 519 Pa. 380, 548 A.2d 1194 (1988).

*City of Scranton v. Shoemaker*, 59 Pa.Commonwealth Ct. 141, 428 A.2d 1048 (1981). In the *PLCB* case, the Supreme Court indicated that the "rational derivation" test is met if the decision represents a reasonable interpretation of the labor agreement between the parties. "Furthermore, the parties to a collective bargaining agreement have bargained for the arbitrator's construction, not the courts; thus, a court has no business intruding into the domain of the arbitrator because its interpretation of the agreement differs from [the arbitrators.]" *Scranton Federation of Teachers v. Scranton School District*, 498 Pa. 58, 65, 444 A.2d 1144, 1147 (1982) (citation omitted). Accordingly, "the arbitrator's interpretation of the contract must be upheld if it is a reasonable one." *International Brotherhood of Firemen & Oilers, AFL–CIO Local 1201 v. School District of Philadelphia*, 465 Pa. 356, 366, 350 A.2d 804, 809 (1976).

As stated by the United States Supreme Court in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960):

A mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. To require opinions free of ambiguity may lead arbitrators to play it safe by writing no supporting opinions. This would be undesirable for a well-reasoned opinion tends to engender confidence in the integrity of the process and aids in clarifying the underlying agreement. Moreover, we see no reason to assume that this arbitrator has abused the trust the parties confided in him and has not stayed within the areas marked out for his consideration. It is not apparent that he went beyond the submission.

*See also United Steelworkers of America v. Am ican Manufacturing Co.*, 363 U.S. 564, 567–68, 80 S.Ct. 1343, 1346–47, 4 L.Ed.2d 1403 (1960), wherein the Court stated:

The function of the court is very limited when the parties have agreed to submit all questions of contract interpretation to the arbitrator. It is confined to ascertaining whether the party seeking arbitration is making a claim which on its fact is governed by the contract. Whether the moving party is right or wrong is a question of contract-interpretation for the arbitrator. In these circumstances the moving party should not be deprived of the arbitrator's judgment, when it was his judgment and all that it connotes that was bargained for.

The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious. The processing of even frivolous claims may have therapeutic values of which those who are not a part of the plant environment may be quite unaware.

The issue before the arbitrator in this case was whether the Grievant was discharged without just cause. The agreement itself, as in other collective bargaining agreements, does not give a definition of "just cause." As noted by the highly respected arbitrator Carroll R. Daugherty, opinions of arbitrators over the years have developed a sort of "common law" definition of just cause. In his arbitration decision of *Enterprise Wire Co.*, 46 LA 359 (Daugherty, 1966), he set forth seven tests to be applied in determining "just cause." [2] A "no" answer to any of the seven questions normally would signify that just cause did not exist.[3]

2. Mr. Daugherty received the American Arbitration Association Lifetime Achievement Award in 1986 for his development of the seven tests of just cause.

3. The seven questions to be asked are:

In *Whirlpool Corp.*, 58 LA 421, 427 (Daugherty, 1972), Arbitrator Daugherty summarized, after eight years of experience with the application of the seven tests for just cause he noted:

Labor and human relations circumstances vary widely from case to case, and no formula can be developed whereunder the facts can be fed into a 'computer' that spews out the inevitably correct answer on a sheet of paper. There is no substitute for sound human judgment. The [q]uestions and [n]otes do represent an effort to minimize an arbitrator's consideration of irrelevant facts and his possible human tendency to let himself be blown by the variable winds of sentiment on to an uncharted and unchartable sea of "equity".

■■■■ The court in the instant case questioned the arbitrator's consideration of the evidence in interpreting the just cause provision of the agreement. However, as noted

1. Did the company give to the employee forewarning or foreknowledge of the possible or probable disciplinary consequences of the employee's conduct?

       *     *     *     *     *     *

2. Was the company's rule or managerial order reasonably related to (a) the orderly, efficient, and safe operation of the company's business and (b) the performance that the company might properly expect of the employee?

       *     *     *     *     *     *

3. Did the company, before administering discipline to an employee, make an effort to discover whether the employee did in fact violate or disobey a rule or order of management?

       *     *     *     *     *     *

4. Was the company's investigation conducted fairly and objectively?

       *     *     *     *     *     *

5. At the investigation, did the 'judge' obtain substantial evidence or proof that the employee was guilty as charged?

       *     *     *     *     *     *

6. Has the company applied its rules, orders, and penalties evenhandedly and without discrimination to all employees?

       *     *     *     *     *     *

7. Was the degree of discipline administered by the company in a particular case reasonably related to (a) the seriousness of the employee's proven offense and (b) the record of the employer in his service with the company?

*Enterprise Wire Co.*, 46 LA 363–64.

above and as set forth in the *United Paperworkers International Union v. Misco, Inc.*, 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), in collective bargaining agreements, it is the arbitrator's judgment and all that it connotes that was bargained for. Part of what the arbitrator's judgment connotes is the arbitrator's view of the facts and of the meaning of the contract that the parties have agreed to accept. Therefore, a court may not reject the arbitrator's findings simply because it disagrees with them, nor may it reject an award on the ground that the arbitrator misread the contract. For the same reason, where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect. As stated by the Supreme Court in *Misco*, "courts therefore are prohibited from second guessing the arbitrator's fact finding and contract interpretation as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," rather than simply applying his own brand of industrial justice.

In conclusion, unlike the *PLCB* and *Musser* cases, it was not manifestly unreasonable for the arbitrator here to conclude that no just cause existed, particularly since the parties did not outline a definition of just cause in the agreement. Therefore, although the arbitrator's rational for his award was somewhat nebulous, we cannot say that it was manifestly unreasonable or irrationally derived from the agreement or that his award did not draw its essence from the agreement. This decision is consistent with the federal and our Commonwealth policy that arbitration under collective bargaining agreements is the preferred manner of resolution of labor disputes and that the less judicial participation, the better.

Accordingly, we reverse the trial court and reinstate the arbitrator's award.

## ORDER

AND NOW, this 18th day of January, 1990, the order of the Court of Common Pleas of Berks County in the above-

captioned matter is hereby reversed and the arbitrator's award is reinstated.