**SCHOOL DISTRICT OF SPRINGFIELD TOWNSHIP**

v.

**SPRINGFIELD TOWNSHIP EDU-CATIONAL SUPPORT PERSON-NEL ASSOCIATION, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 1998.
Decided April 28, 1998.

A. Martin Herring, Philadelphia, for appellant.

Kenneth A. Roos, Blue Bell, for appellee.

Before SMITH and FLAHERTY, JJ., and MIRARCHI, Jr., Senior Judge.

FLAHERTY, Judge.

Springfield Township Educational Support Personnel Association (Association) appeals from an order of the Court of Common Pleas of Montgomery County (the trial court) which reversed the award of an arbitrator. For the reasons which follow, we reverse the

order of the trial court and reinstate the arbitrator's award.

Mr. Randolph Mack was a custodian at a school in the School District of Springfield Township (District). The District terminated Mr. Mack's employment as a custodian on June 7, 1995. The termination prompted this case.

In September 1994, Mr. Mack met with Principal Landis and Maintenance Supervisor Johnson to discuss Mr. Mack's deficient custodial performance and his frequent tendency to arrive for work thirty to forty minutes early. At that meeting, Principal Landis and Supervisor Johnson explicitly directed Mr. Mack not to arrive at work more than fifteen minutes before his scheduled start time. Principal Landis and Supervisor Johnson testified before the arbitrator that their concern regarding Mr. Mack's early arrival was prompted by insurance considerations. They testified that the insurance carrier required that employees not arrive early for work on account of safety reasons and coverage concerns. At this meeting, they warned Mr. Mack that continuing to arrive at work more than fifteen minutes early and failing to improve his cleaning would constitute a basis for disciplinary action, including, but not limited to, dismissal.

Sometime in January 1995, the District learned that Mr. Mack could not read and that this might have contributed to his failure to clean as he was instructed because the instructions were written. Thereafter, the District provided a tape recorder for Mr. Mack, leaving verbal work instructions for him. However, sometimes this tape recorder was locked away, thus preventing Mr. Mack from receiving his specific instructions.

On January 6, 1995, the District suspended Mr. Mack for five days as a result of his continuing to arrive at work more than fifteen minutes early. From January 1995 through April 1995, Mr. Mack arrived at least thirty minutes early to work on eleven different occasions. On May 5, 1995, the District terminated him.

The Association and the District are parties to a Collective Bargaining Agreement (CBA). The Association grieved Mr. Mack's termination. The parties went to arbitration. The arbitrator found that in the letter of termination which the District sent to Mr. Mack, "of the twenty dates listing the events leading to his termination, fourteen of them dealt with early arrivals." (Arbitrator's opinion at p. 12.) The arbitrator ordered that Mr. Mack be returned to his job, finding that coming to work early did "not constitute an acceptable reason for just cause as a reason for termination." (Arbitrator's opinion at 14.) The arbitrator found that Mr. Mack had given sufficient explanation for his failure to fully clean his areas. The arbitrator stated that Mr. Mack "did not perform [his cleaning duties] as well as possible but with some reasons for this and ... the arrival time seem[ed] to be the pertinent reason for termination." Having concluded that the main reason for termination was Mr. Mack's early arrival at work, and because the arbitrator concluded that such could not constitute just cause within the meaning of the CBA, the arbitrator ordered reinstatement.

The District petitioned the trial court for review of the arbitrator's award. The trial court concluded that once the arbitrator found that Mr. Mack had, in fact, engaged in the conduct which the District charged him with, then the arbitrator was without power to modify the discipline imposed by the District. The trial court also concluded that the arbitrator erred in determining that Mr. Mack's showing up early for work after being instructed not to do so did not constitute just cause for termination. The trial court also found that the arbitrator's award was contrary to the CBA because the CBA gave the District the exclusive right to establish rules of conduct and to schedule work. Thus, the trial court reversed the arbitrator's award. This appeal from the trial court's order followed.

■ The limit to an appellate court's review of an arbitrator's award in the context of a grievance arbitration such as this one is the "essence test" and the appropriate inquiry is whether the award can in any way be rationally derived from the collective bargaining agreement in light of the agreement, its language, context and any other indicia of

the parties' intent. *Leechburg Area School District v. Dale,* 492 Pa. 515, 424 A.2d 1309 (1981).

The first issue which the Association presents for our review is whether the trial court erred by exceeding its narrow scope of review pursuant to the essence test. The trial court found that the arbitrator's award did not draw its essence from the CBA because once the arbitrator determined that Mr. Mack had in fact engaged in the conduct which the District disciplined him for, the arbitrator was without authority to modify the discipline imposed, citing, *Riverview School District v. Riverview Education Association, PSEA–NEA,* 162 Pa.Cmwlth. 644, 639 A.2d 974, 977 (1994), *appeal denied,* 540 Pa. 588, 655 A.2d 518 (1995).

The Association argues that the award in this case did in fact draw its essence from the CBA and therefore the trial court had to affirm because the only inquiry the trial court is permitted to embark upon is to ask whether the award drew its essence from the CBA. The Association notes that the CBA permits discipline for "just cause" but that the CBA is silent as to what constitutes just cause; accordingly, the arbitrator herein was free to determine if the behavior of Mr. Mack constituted "just cause" within the meaning of the CBA. As the arbitrator determined that the principal's directive not to show up early was not reasonable and, therefore, a violation thereof could not constitute just cause, the arbitrator was merely performing his function of interpreting the CBA. Thus, the Association asserts that the trial court was without authority to review the arbitrator's interpretation of the CBA given the circumscribed scope of review mandated by the essence test.

■ The District argues that Article IV of the CBA specifically gives to the District the power and responsibility to schedule work and to adopt and enforce rules of conduct. The District notes that the arbitrator concluded that the principal's directive to Mr. Mack to not show up for work any earlier than fifteen minutes prior to scheduled starting time was "unreasonable". The District argues that the arbitrator's conclusion in this regard exceeded his authority and impermis-

sibly interfered with the District's exclusive right to schedule work and to establish rules of conduct which rights were given to the District by the CBA. However, we note that the precise language of the CBA provides that the District's responsibilities "shall include ... the right to establish and enforce *reasonable* Rules of Conduct...." (Reproduced Record (R.R.) at p. 27. (emphasis added)). *See County of Centre v. Musser,* 519, Pa. 380, 393, 548 A.2d 1194, 1200 (1988)("[g]iven the nature and scope of judicial review under the 'essence' test, we must begin our resolution of this appeal by focusing on the Collective Bargaining Agreement itself.") The CBA nowhere defines or explicates the term "reasonable" just as the CBA does not define "just cause." Accordingly, in the absence of clear guidance from the CBA, the arbitrator has the power to define "reasonable" and "just cause." *See, e.g., Upper St. Clair School District v. Upper St. Clair Educational Support Personnel Association,* 168 Pa.Cmwlth. 1, 649 A.2d 470, 472 n. 4 (1994); *McKeesport Area School District v. McKeesport School Service Personnel Association,* 137 Pa.Cmwlth. 28, 585 A.2d 544 (1991); *American Federation of State County and Municipal Employees v. City of Reading,* 130 Pa.Cmwlth. 575, 568 A.2d 1352 (1990) (*AFSCME*).

For instance, in *McKeesport Area School District,* the district terminated a grounds keeper for three separate incidents of neglecting his duties. The union representing the grounds keeper grieved the termination. The arbitrator found that only one of the three incidents constituted just cause for disciplining the groundskeeper. However, after determining that termination was disproportionate to the infraction, the arbitrator modified the termination to a 14–day suspension. The district appealed to the Court of Common Pleas which upheld the award. The district then appealed to this Court. In affirming the award, this Court stated that:

> Because the [collective bargaining] agreement itself fails to define just cause, it is within the arbitrator's province to interpret the just cause provision.... The arbitrator found that only the incident of March 8, 1988 provided just cause for dis-

cipline. However, the arbitrator did not find Grievant's [the grounds keeper's] conduct on that occasion to be serious enough to warrant dismissal.... Moreover, because the District discharged Grievant on the basis of three violations and the arbitrator determined that only one of these violations provided just cause for discipline, the arbitrator appropriately modified the discharge to a suspension.

*McKeesport Area School District,* 585 A.2d at 546. Like the agreement in *McKeesport Area School District,* the CBA here fails to define "just cause"; thus it was within the arbitrator's province to give meaning to that phrase, which is precisely what the arbitrator herein did. Moreover, because the CBA here did not define "reasonable" within the context of "Rules of Conduct", the arbitrator was likewise free to give meaning to that term as well.

In *AFSCME,* a city employee was discharged for being intoxicated and sleeping while on duty, insubordination and failing to perform his assigned work. The union representing the employee grieved the discharge. The arbitrator ordered the employee reinstated and made whole for all lost wages and benefits. The city appealed and the Court of Common Pleas vacated the arbitrator's award. The union appealed to this Court which reversed the trial court's order and reinstated the arbitrator's award. This Court stated the issue before the arbitrator as whether the city employee was discharged without just cause. This Court noted that "[t]he [collective bargaining] agreement itself, as in other collective bargaining agreements, does not give a definition of 'just cause.'" *AFSCME,* 568 A.2d at 1355. This Court then went on to conclude that "it was not manifestly unreasonable for the arbitrator here to conclude that no just cause existed, particularly since the parties did not outline a definition of just cause in the agreement." *AFSCME,* 568 A.2d at 1356. Likewise here, the parties did not define "just cause" in the CBA; therefore the arbitrator was free to find that the behavior of Mr. Mack, even if it was as the District alleged, did not constitute "just cause" for dismissal.

In *Upper St. Clair School District,* while transporting a busload of students, a school bus driver left the bus and engaged in a physical confrontation with an angry motorist. The School District dismissed the driver, alleging that he intentionally abandoned the students to engage in the physical confrontation. The driver's union grieved the dismissal. The arbitrator found that the driver's conduct at most amounted to negligent conduct as opposed to intentional conduct and modified the dismissal to a 90–day suspension. The School District appealed the arbitrator's decision to the Court of Common Pleas which upheld the arbitrator's determination. The School District appealed to this Court, essentially arguing that the arbitrator exceeded his powers in modifying the termination to a 90–day suspension. In rejecting that argument, and concluding that the arbitrator did not exceed his scope of authority, this Court stated that "[w]hen an arbitrator finds that just cause for dismissal does not exist and the collective bargaining agreement does not prohibit the arbitrator's modification of a district's penalty, then the arbitrator may modify the discipline accordingly." *Upper St. Clair School District,* 649 A.2d at 472–73. Just as in *Upper St. Clair School District,* so also here, the arbitrator found that just cause did not exist for terminating Mr. Mack and as the CBA did not prohibit an arbitrator from modifying the penalty, the arbitrator was free to do as he did. The arbitrator's determination that Mr. Mack's actions did not constitute "just cause" and the arbitrator's modification of the penalty were not inconsistent with the CBA and therefore the arbitrator's award could be said to be rationally derived from the CBA.

■ Because the arbitrator was free to find that the "rule of conduct" established for Mr. Mack which prohibited him from showing up at work more than 15 minutes prior to his scheduled time was unreasonable, within the meaning of the CBA, and because the arbitrator was free to find that a violation of such a rule did not constitute "just cause" within the meaning of the CBA, we must conclude that the award drew its essence from the CBA.

This is so because the essence test requires that "an arbitration award must be upheld if it can in any rational way be derived from the collective bargaining agreement in light of the language, context, and other indicia of the parties' intent." *Pennsylvania State Education Association v. Appalachia Intermediate Unit 08*, 505 Pa. 1, 5, 476 A.2d 360, 362 (1984). Given the silence of the CBA on the issue of what constitutes "reasonable" rules of conduct and "just cause," we must conclude that the arbitrator's determination of reasonableness and just cause and his consequent award based thereon in this case could rationally be derived from the CBA. Accordingly, we agree with the Association that the trial court erred in finding that the arbitrator's award did not derive its essence from the CBA.

In the second issue which the Association raises for this Court's review, the Association essentially argues that the trial court erred as a matter of law in determining that the arbitrator exceeded his authority when the arbitrator modified the punishment which the District imposed upon Mr. Mack. The trial court reasoned that once the arbitrator concluded that Mr. Mack did, in fact, engage in the acts which the District alleged he did, namely, failing to satisfactorily clean his areas and showing up more than fifteen minutes early for work, the arbitrator was without power to modify the discipline imposed by the District. The trial court cited *Riverview School District v. Riverview Education Association, PSEA–NEA*, in support of its disposition of this case. In *Riverview*, two teachers utilized sick time to take a ski vacation. Their employer terminated them. The arbitrator found that in fact the two teachers did as their employer alleged but nevertheless reinstated the teachers, finding that notwithstanding their improper use of sick time, such did not constitute "just cause" for termination. The employer appealed and the trial court upheld the arbitrator. The employer appealed to this Court which vacated the arbitrator's award. This Court stated that once the arbitrator found that the teachers committed the conduct charged, the question of appropriate discipline was a matter reserved by the CBA and applicable law to the employer.

The Association attempts to distinguish *Riverview* by noting that *Riverview* dealt with professional employees. The Association notes that although the CBA in *Riverview* did not define "just cause" like the CBA here, the Pennsylvania School Code was incorporated in the *Riverview* CBA and the School Code specifically defined causes which justified termination. The Association urges that *Riverview* is inapplicable here because Mr. Mack is a non-professional employee whereas *Riverview* involved professional employees who should be held to a higher standard. Moreover, "just cause" was given specific content in *Riverview* via the incorporation of the School Code in the *Riverview* CBA unlike here where just cause is not defined. The District responds that the definition of what constitutes just cause for termination of professional employees, as found in the School Code, actually provides greater protection for professional employees, essentially limiting the grounds for discharge of professional employees whereas there are no such limitations on what constitutes just cause for termination of non-professional employees. According to the District, because this case deals with a non-professional employee not protected by the statutory limitations on just cause for discharge, *Riverview*, if anything, stands for the proposition that the non-professional employee involved herein had less protection from discharge for his conduct than a professional employee would have.

We agree that the distinction between this case and *Riverview* based on the difference between professional and non-professional employment status is not a legally significant distinction for purposes of deciding this case. Rather, the legally significant distinction between this case and *Riverview* is that in *Riverview* there was language in the CBA that committed the question of appropriate discipline to the employer. *See Riverview* 639 A.2d at 979, ("the question of appropriate discipline was a matter *reserved by the Agreement* and applicable law to the employer.")(emphasis added). The parties herein however have not pointed to any language in the governing CBA that likewise commits the question of which discipline is to be adminis-

tered *exclusively* to the District. *See, e.g., McKeesport School District v. Personnel Association,* 585 A.2d at 546 n. 4 (this Court distinguished the case before it from *County of Centre v. Musser, supra,* on the basis that there was specific language in the CBA in *Musser* which limited the arbitrator's authority to determining whether there was just cause for discharge unlike in the case before it where there was no such language which precluded the arbitrator from modifying the penalty imposed).

■ Accordingly, we agree with the Association that the trial court erred as a matter of law in concluding that simply because the arbitrator did not reject the facts as alleged by the District, the arbitrator was thereby precluded from modifying the penalty imposed. Such a rule of law would ignore the traditional role of the arbitrator who does not just make findings of fact but must determine the legal significance of those facts in light of the CBA. *See AFSCME,* 130 Pa. Cmwlth. 575, 568 A.2d 1352, 1356 (Pa. Cmwlth.1990) ("Part of what the arbitrator's judgment connotes is the arbitrator's view of the facts *and of the meaning of the contract* that the parties have agreed to accept.")(emphasis added). In other words, the arbitrator was certainly free to do as he did here, namely, determine that the essential facts as alleged by the District were true, *i.e.,* Mr. Mack's cleaning was below expectations and that he showed up to work earlier than he was instructed to do, but then go on to determine that such conduct did not amount to "just cause" within the meaning of the CBA. *See, e.g., McKeesport Area School District* (arbitrator did not dispute the facts as alleged by the District in two of three incidents forming the basis of the District's discipline but nevertheless concluded that those facts did not constitute just cause.)

To summarize then, we are therefore constrained by prior caselaw to hold that the parties agreed in the CBA that an arbitrator shall decide what is "just cause" to discipline by not further limiting "just cause" in the CBA. Even though the employer retained the right in the CBA to establish and enforce reasonable rules of conduct, by agreeing to the use of the word "reasonable" and by omitting language circumscribing the term "reasonable," such as by use of the term "all" instead of "reasonable," the employer ceded to the arbitrator the decision making power to define what is meant by the term "reasonable." Further, even if the arbitrator, in interpreting the CBA, agreed that the work rule was "reasonable" (which he did not) he would still be within the essence of the contract in determining that a violation of such a reasonable work rule did not constitute "just cause" for the discipline imposed, because just cause is also not defined or limited by the CBA.

Because the essence test narrowly circumscribes a court's review of an arbitration award and the trial court in this case exceeded its proper limited review, and because the trial court erred in concluding that the arbitrator was without authority to modify the discipline imposed by the District, the order of the trial court is hereby reversed and the arbitrator's award is reinstated.

### *ORDER*

NOW, April 28, 1998, the order of the Court of Common Pleas of Montgomery County, dated April 2, 1997, and docketed at 96–13607, is hereby reversed. The award of the arbitrator is hereby reinstated.