**PENNSYLVANIA LIQUOR CONTROL BOARD, Petitioner,**

v.

**UNITED FOOD AND COMMERCIAL WORKERS, LOCAL 23, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Sept. 18, 1998.

Decided Dec. 4, 1998.

Patricia J. Goldband, Harrisburg, for petitioner.

James R. Reehl and William P. Getty, Pittsburgh, for respondent.

Before DOYLE and LEADBETTER, JJ., and McCLOSKEY, Senior Judge.

DOYLE, Judge.

The Commonwealth of Pennsylvania, Liquor Control Board (Commonwealth or LCB), petitions this Court to review an arbitrator's award that increased the Commonwealth's contribution to three Health and Welfare Funds (Fund) responsible for administering supplemental benefits for employees of the Board who are members of the United Food and Commercial Workers Union, Local 23 (Union).

The Union and the Commonwealth were parties to a three-year collective bargaining agreement which expired on June 30, 1996. They had been unsuccessful in negotiating a successor agreement but continued negotiations and, on June 28, 1996, agreed to extend the old collective bargaining agreement beyond its June 30, 1996 expiration date. This extension agreement provided that:

All terms and conditions of the current agreement shall remain in full force and effect during this [e]xtension agreement

until either party gives seven (7) days written notice to terminate the agreement or until a negotiated settlement is reached. The [Commonwealth] and the Union shall conform to all applicable laws concerning any type of labor dispute.

(Arbitrator's 4/14/98 Award at 2–3.) Article XIX of the collective bargaining agreement, under the heading of Health and Welfare, sets out the responsibilities of the Commonwealth regarding contributions to the Fund and provides in pertinent part:

A. The [Commonwealth] shall contribute to three jointly administered Taft–Hartley Health and Welfare Funds as shall be designated by the Union. The contribution rates for the period July 1, 1993, through June 30, 1994, shall be as follows:

. . . .

The [Commonwealth] will contribute an amount necessary to maintain the June 30, 1993 level of benefits, but no more than $96.53 per month for full-time employes and $68.22 per month for part-time employes for the period July 1, 1994 through June 30, 1995 **and no more than $100.65 per month for full-time employes and $70.28 per month for part-time employes for the period July 1, 1995 through June 30, 1996.**

(Article XIX of the Collective Bargaining Agreement, Reproduced Record (R.R.) at 13a–14a.) (Emphasis added.) Prior to June 30, 1996, the Commonwealth had been making monthly contributions to the Fund of $100.65 on behalf of full-time employees and $60.61 on behalf of part-time employees since July 1995. In a letter dated May 23, 1997, the Union and the Fund requested that the Commonwealth increase the rate of its contributions to the Fund to $124.24 per month for each full-time employee and $74.81 per month for each part-time employee, to meet a projected shortfall of $11,321.84 per month if the Fund was to maintain the June 30, 1993 level of benefits. The Commonwealth responded, in a letter dated May 29, 1997, stating that it would continue to make contributions to the Fund at the rate in effect on June 30, 1996 (*i.e.*, $100.64 and $60.61), for as long as the extension agreement remained in effect.

The Union, in a letter dated June 11, 1997, filed a grievance alleging the LCB was in violation of the collective bargaining agreement because it failed to pay the appropriate rates needed to maintain the health benefits of both full-time and part-time employees, as required by Article XIX of the agreement, at the level of benefits as they existed on June 30, 1993. The Commonwealth's Bureau of Labor Relations received this grievance on July 16, 1997, and the LCB denied the Union's allegations in a letter dated August 7, 1997.

Arbitrator Helen M. Witt was selected by the parties to adjudicate the grievance filed by the Union. The parties dispensed with a hearing and provided the arbitrator with a document entitled "Issues and Stipulations of Fact" and briefs in support of their respective positions. The arbitrator was presented with two issues: (1) whether the grievance was timely filed; and (2) did Article XIX require the Commonwealth to make contributions to the Fund in excess of the contributions that were being made at the conclusion of the collective bargaining agreement on June 30, 1996. Arbitrator Witt issued her award on April 14, 1998, in which she concluded that the Commonwealth was obligated to increase its rate of contribution to the Fund only on behalf of its part-time employees from $60.61 to $70.28 per month, the ceiling set for such contributions in the collective bargaining agreement. It is the Commonwealth's petition for review of this award that is now before this Court.

The Commonwealth argues that the arbitrator's award fails to draw its essence from the collective bargaining agreement and, thus, must be overturned by this Court.

The scope of review of an arbitrator's decision is highly circumscribed, and that decision will not be overturned if it draws its essence from the collective bargaining agreement. *American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO v. City of Reading,* 130 Pa.Cmwlth. 575, 568 A.2d 1352 (Pa.Cmwlth.1990). Under the "essence test," this Court is confined to determining whether the arbitrator's decision could rationally

be derived from the collective bargaining agreement. *Riverview School Dist. v. Riverview Education Association, PSEA–NEA,* 162 Pa.Cmwlth. 644, 639 A.2d 974 (Pa. Cmwlth.1994), *petition for allowance of appeal denied,* 540 Pa. 588, 655 A.2d 518 (1995). Within the standard of the essence test is the requirement that the arbitrator's award cannot be manifestly unreasonable. *Id.* However, if the award can "in any rational way be derived from the agreement, viewed in light of its language, its context, and any other indicia of the parties' intention," the court must uphold the arbitrator's decision. *County of Centre v. Musser,* 519 Pa. 380, 392, 548 A.2d 1194, 1199 (1988).

The Commonwealth asserts that the arbitrator, in ordering the Commonwealth to increase the amount of payments to the Fund on behalf of its part-time employees, added a provision not in the original collective bargaining agreement. The Commonwealth, in its brief to this Court, states:

> The arbitration award at issue in this case should be vacated as not being rationally derived from the essence of the collective bargaining agreement. The basis for this assertion is that the arbitrator, in reaching her decision, modified clear and precise time provisions set forth in the contract for determining the rate of health and welfare contributions for part-time employes. An examination of the language of the parties' contract reveals that the extended collective bargaining agreement does not require the Commonwealth to make any contributions in excess of the contributions made as of June 30, 1996.

(Commonwealth's Brief at 12–13.) We disagree.

■ The language of the collective bargaining agreement, extended by the parties' own voluntary stipulation, provides the rate at which the Commonwealth is required to contribute to the Fund on behalf of its employees. The agreement also provides a cap on those contributions through the expiration of the parties' agreement on June 30, 1996. Because the Commonwealth agreed to extend this contract, which would, of course, include the contribution cap provision, this Court finds the Commonwealth's argument that the arbitrator's award did not draw its essence from the collective bargaining agreement to be clearly without merit.

Accordingly, because the arbitrator's decision does draw its essence from the collective bargaining agreement, the decision of the arbitrator is affirmed.

### ORDER

**NOW,** December 4, 1998, the decision of the arbitrator in the above-captioned matter is hereby affirmed.