**Greater Altoona Career and Technology Center Education Association v. Greater Altoona Career and Technology Center**

C.P. of Blair County, no. 99 GN 3181.

*Randall C. Rodkey,* for petitioner.
*David P. Andrews,* for respondent.

CARPENTER, *J.,* March 9, 2000—This matter comes before the court on petition for review and application to vacate and/or modify award of arbitrator. Briefs have been filed and reviewed by this court. We have researched the applicable case law. Finally, we have allowed some several weeks to pass from the date of oral argument on January 6, 2000, to afford the parties an opportunity to supplement the record and/or stipulate to the same. We have not heard the record is incomplete and conclude the matter is ready for decision.

Procedurally, this case comes before the court as a result of a grievance filed January 19, 1999, challenging a November 18, 1998 suspension of diesel mechanics instructor, Kenneth Frederick. Subsequently, Frederick was notified by letter on January 26, 1999, that the joint operating committee by unanimous vote had converted his suspension to termination. The parties agreed to proceed directly to arbitration.

At the March 10, 1999 arbitration hearing before Arbitrator Kathleen Miller, the parties stipulated the issue to be decided was: Was there just cause for Mr.

Frederick's termination, and if not, what is the appropriate remedy? The arbitrator entered her award on May 28, 1999, with the grievance being denied. This affirmed the Technology Center's position that good cause had been shown for Mr. Frederick's termination. Following the arbitrator's decision, a timely petition was filed requesting further review and oral argument before this court.

Our review of this matter is governed by section 7302(d)(2) of the Uniform Arbitration Act, 42 Pa.C.S. §7302(d)(2) which provides as follows:

"(2) Where this paragraph is applicable, a court in reviewing an arbitration award pursuant to this subchapter shall, notwithstanding any other provision of the subchapter, modify or correct the award *where the award is contrary to law and is such that had it been a verdict of a jury, the court would have entered a different judgment or a judgment notwithstanding the verdict.*"

Under the standard enumerated above, our first inquiry is whether the award was contrary to law. We are satisfied it was. The arbitrator failed to apply the applicable legal standard defining "good cause" when that term is not defined in the parties' collective bargaining agreement. Since that is true, the arbitrator's award cannot possibly be rationally related to the underlying collective bargaining agreement so that the essence test (agreed to by the parties as the applicable standard) is clearly violated. As such, this court is empowered to modify or correct the award under section 7302(d)(2) enunciated above.

In so holding, we do not deny the arbitrator's inherent authority under long-established Pennsylvania case law to determine the issue of good cause where it is not de-

fined under the collective bargaining agreement. However, that ability is necessarily limited to the applicable legal standard. In this case, that applicable legal standard is enunciated in the case of *International Brotherhood of Firemen and Oilers, Local 59 v. Township of Falls,* 688 A.2d 269 (Pa. Commw. 1997). In *Falls,* discussing the proper definition of just cause where the collective bargaining agreement does not address that definition, the court stated the proper test as follows:

"As to the merits of the grievance, the issues presented by the parties for the arbitrator's consideration are: (1) whether Brown was 'disciplined for proper cause'; and (2) if not, what the remedy should be. Arbitrator's decision, p. 2. Because the agreement itself does not define the term 'proper cause' or 'just cause,' it was within the arbitrator's province to interpret that term. *McKeesport Area School Dist. v. McKeesport School Service Personnel Assn, PSSPA/PSEA,* 137 Pa. Commw. 28, 585 A.2d 544 (1990).

"In *American Federation of State, County and Municipal Employees, District Council 88 v. City of Reading,* 130 Pa. Commw. 575, 568 A.2d 1352 (1990), *this court set forth seven factors to be considered in determining the existence of 'just cause' for discipline:* (1) Did the employer give the employee forewarning of the possible disciplinary consequences of his or her conduct?; (2) Was the employer's rule or order reasonably related to the orderly, efficient and safer operation of its business and the performance that the employer might properly expect of the employee?; (3) did the employer make an effort to determine whether the employee in fact violated its rule or order?; (4) Was the employer's investigation conducted fairly and objectively?; (5) Did the

employer obtain substantial evidence of the employee's violation?; (6) Has the employer applied its rules and penalties evenhandedly to all employees?; and (7) Was the degree of imposed discipline reasonably related to the seriousness of the offense and the employee's work record? Where any one of the above factors is not satisfied, just cause for discipline does not exist. *Id.*" *International Brotherhood v. Falls* at 271. (emphasis added)

We have carefully considered the case law both prior and subsequent to *Falls* in reaching our belief that the standard set forth above is the law of the Commonwealth of Pennsylvania.

The earliest reference which we are able to find to the seven factor test enunciated in the 1997 *Falls* opinion is contained in the case of *AFSCME, Council 88 v. City of Reading,* 130 Pa. Commw. 575, 568 A.2d 1352 (1990) cited in *Falls.* In that opinion, the seven factor test is referenced in both the body of the opinion and by footnote. We cite to the body of the opinion as follows:

"The issue before the arbitrator in this case was whether the grievant was discharged without just cause. The agreement itself, as in other collective bargaining agreements, does not give a definition of 'just cause.' As noted by the highly respected arbitrator Carroll R. Daugherty, opinions of arbitrators over the years have developed a sort of 'common-law' definition of just cause. In his arbitration decision of *Enterprise Wire Co.,* 46 LA 359 (Daugherty, 1966), he set forth seven tests to be applied in determining 'just cause.' [See footnote 2.] A 'no' answer to any of the seven questions normally would signify that just cause did not exist. [See footnote 3.]

"In *Whirlpool Corp.,* 58 LA 421, 427 (Daugherty, 1972), Arbitrator Daugherty summarized, after eight

years of experience with the application of the seven tests for just cause he noted:

"Labor and human relations circumstances vary widely from case to case, and no formula can be developed whereunder the facts can be fed into a 'computer' that spews out the inevitably correct answer on a sheet of paper. There is no substitute for sound human judgment. The [q]uestions and [n]otes do represent an effort to minimize an arbitrator's consideration of irrelevant facts and his possible human tendency to let himself be blown by the variable winds of sentiment on to an uncharted and unchartable sea of 'equity.' " *AFSCME v. City of Reading* at 582-83, 568 A.2d at 1355-56.

In the interest of a complete history, we quote the footnotes as follows:

"2. Mr. Daughtery received the American Arbitration Association Lifetime Achievement Award in 1986 for his development of the seven tests of just cause.

"3. The seven questions to be asked are:

"(1) Did the company give to the employee forewarning or foreknowledge of the possible or probable disciplinary consequences of the employee's conduct? . . .

"(2) Was the company's rule or managerial order reasonably related to (a) the orderly, efficient, and safe operation of the company's business and (b) the performance that the company might properly expect of the employee? . . .

"(3) Did the company, before administering discipline to an employee, make an effort to discover whether the employee did in fact violate or disobey a rule or order of management? . . .

"(4) Was the company's investigation conducted fairly and objectively? . . .

"(5) At the investigation, did the 'judge' obtain substantial evidence or proof that the employee was guilty as charged? . . .

"(6) Has the company applied its rules, orders, and penalties evenhandedly and without discrimination to all employees? . . .

"(7) Was the degree of discipline administered by the company in a particular case reasonably related to (a) the seriousness of the employees' proven offense and (b) the record of the employer in his service with the company? *Enterprise Wire Co.,* 46 LA 363-64."

Although Mr. Daugherty's test was referenced in *AFSCME v. City of Reading* it is not stated unequivocally that it was adopted as the law of the Commonwealth of Pennsylvania. However, in *Falls* that status was clarified. The citation to the seven-factor Daugherty test in *Falls* is in the body of the opinion. It is not dicta. It clearly directs the seven Daugherty factors are *to be considered* in determining "just cause." As such, the panel in *Falls* removed any question the court adopted this standard. There is nothing precatory or optional in its application. Further, the arbitrator in *Falls* clearly used the tests as the following indicates:

*"Applying the above tests to the facts presented at the hearing,* the arbitrator found, inter alia, that Brown was at fault in causing the accident; although Brown had no forewarning of possible discipline for negligently causing an accident, any professional driver would expect some kind of discipline for such accident; and the forfeiture of earned vacation, however, was too severe, considering his overall employment record showing no previous disciplinary action taken against him and the fact that the April 6, 1994 accident was his first accident dur-

ing his 22 years of employment." *Falls,* 271-72. (emphasis added)

We cite this to illustrate the panel of the Commonwealth Court had before it the very test (Daugherty) which they adopted in *AFSCME* and *Falls.* There can be no mistaking their intention.

We have researched the case law searching for any indications to the contrary. We find none. What we find are cases such as *School District of Springfield Township v. Springfield Township Educational Support Personnel Association,* 711 A.2d 602 (Pa. Commw. 1998) and *Greene County and Greene County Children and Youth Services v. District 2, United Mine Workers of America and Local Union 9999, United Mine Workers of America,* 736 A.2d 52 (Pa. Commw. 1999). Both of these cases speak to an arbitrator's authority to determine "just cause" where it is not otherwise defined in a collective bargaining agreement. However, neither case discusses the standard to be applied by an arbitrator in determining what constitutes just cause. In *Springfield,* the focus is on the trial court's discretion to substitute its opinion for the arbitrator's as to what constitutes good cause. There is no discussion of what standard is properly applied. This is true notwithstanding the fact Senior Judge Mirarchi Jr. (who authored the *Falls* opinion) was also on the panel in *Springfield.* Similarly, the *Greene County* opinion focuses almost exclusively on the arbitrator's discretion to modify the award once just cause has been found. This, notwithstanding its author, Senior Judge Narick, also authored *AFSCME v. City of Reading* when the seven-part standard was first enunciated/adopted. Accordingly, while the later cases (*Springfield* and *Greene County*) affirm the arbitrator's sole discre-

tion to determine what constitutes just cause, they do not disturb the applicable legal standard as enunciated in *AFSCME* and *Falls*.

Having established the applicable standard, there is no question it was almost completely ignored in Arbitrator Miller's decision. Indeed, the arbitrator discusses several of the applicable factors not at all. For example, there is no discussion whether or not the employer applied its rules and penalties evenhandedly to all employees. There is also no discussion of whether the degree of imposed discipline reasonably related to the seriousness of the offense and the employee's work record. Additionally, issues such as whether the employer's investigation was conducted fairly and objectively and whether the employer obtained substantial evidence of the employee's violation are discussed only peripherally outside the context of the applicable standard. Finally, while the arbitrator's decision does discuss the existence of certain policies which the arbitrator concluded were applicable, the opinion is silent on whether or not forewarning an employee as to the consequences of a violation actually occurred. As such, the arbitrator's decision is violative of law and cannot support her factual findings. Accordingly, this court is required to undertake the process of modification and correction of the award provided for in 42 Pa.C.S. §7302(d)(2).

Our task is to correct the arbitrator's failure to apply the applicable test. Since the association concedes factors two and three we will confine our discussion to the remaining five factors numbered one, four, five, six and seven. We conduct this inquiry to determine if any of the above factors are not satisfied so that just cause does not

exist under *AFSCME v. Reading, (supra)* and *Falls, (supra)*. We will discuss them seriatim.

*"(1) Did the employer give the employee forewarning of the possible disciplinary consequences of his or her conduct?*

"We have reviewed the record in this case. We have reviewed the arbitrator's decision. There is absolutely no evidence in the record indicating what the possible disciplinary consequences of Mr. Frederick's conduct *were* let alone that he was forewarned of them. The cited portions to the rules and regulations in the record deal entirely with the treatment of what constitutes school property. To make matters worse, none of the cited regulations deals with property solicited by teachers for use in their classrooms. This absence of regulation exists notwithstanding uncontradicted testimony these items constituted approximately 3/4 of the inventory with which the teachers had to work given the school district parts budget of only $4,000 per year. As such, the school district is left to make this case by inference (without specific regulation) and/or by elevating to regulation what the front office 'perceived' the regulation of school property to require.

"The record clearly reflects the reality of what has been going on in the shops for the last 30 years. That reality is either totally contrary to or not addressed by the regulations. The failure to communicate clearly what constitutes 'school property' literally precludes forewarning. Further, even if school property were involved, the regulations are silent as to what would constitute appropriate discipline.

*"(4) Was the employer's investigation conducted fairly and objectively?*

"This criteria is much more difficult to evaluate. Undoubtedly, there are facts known to Dr. Ross which are not part of this record. However, even conceding that likely truth, we are concerned *what we do have* appears tainted by something of a police state mentality. One might reasonably expect in an employer/employee relationship where there had been no incidents with an employee over the tenure of his entire career this matter would have been dealt with in a fashion as open as Mr. Frederick's installation of the engines in question. We ask ourselves whether this employee was entitled to be confronted directly (fairly and objectively) in this situation. We believe he was, and that, for whatever reason, it did not occur.

*"(5) Did the employer obtain substantial evidence of the employee's violation?*

"There is no question the school district legitimately attempted to obtain substantial evidence. They were unable to do so because they were unable to demonstrate the engines in question were covered under any clearly defined regulation. As to the '400' engine, one reviewing this record has no idea where it came from. Simply put, no one knows. As to the '305' engine, according to the school district policy relating to products donated by GM, this engine should have been crushed at the same time the remainder of the car was disposed of. That did not occur. Once you take the engine away from the otherwise crushed vehicle, the policy of the school district is already violated and no adequate notice is afforded to a subsequent teacher using the engine as to whether or not the property was originally donated by GM.

*"(6) Has the employer applied its rules and penalties evenhandedly to all employees?*

"One need only examine the testimony of any of the former teachers of the school district (and even the school district's own witness, Mr. Gibbons) to demonstrate any existing policy has been violated routinely for at least 28 years. Given the absence of clear regulation or notice of a policy/consequences one could hardly expect otherwise. This is especially true where the teachers obviously spend considerable energy bartering, soliciting the materials on which their classes depend (often from former students). The long-term non-enforcement of any policies (real or perceived) ensured even with the best intentioned faculty chaos would result.

"*(7) Was the degree of imposed discipline reasonably related to the seriousness of the offense and the employee's work record?*

"Clearly, it was not. On the contrary, a teacher lost his job who had never been subject to reprimand. A teacher who had received accolades and who, just months prior to this suspension, had been requested to increase his diesel instruction certification to include auto mechanics was afforded no consideration. Instead, what was at most a tenuous violation under the time-honored practices of the shop became subject to the death penalty. As such, the discipline related not at all to the gravity of the offense or the employee's work record."

There can be only one result. The finding of just cause must be set aside and reversed and the district ordered to reinstate Mr. Frederick with full back pay with interest, retirement for lost benefits, and that he be otherwise made whole.

In closing, we concede our opinion is predicated on the Daugherty test representing the state of the law in

Pennsylvania and the arbitrator's failure to apply. Absent that, the result should be reversed and the arbitrator affirmed.

In reaching our decision, we have exercised no arbitrary authority. Indeed, we have not addressed the actual findings of the arbitrator at all. This restraint on our part is required by law. As cited in *AFSCME,* citing the Supreme Court in *United Paperworkers International Union v. Misco Inc.,* 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), "[C]ourts . . . are prohibited from second-guessing the arbitrator's fact finding and contract interpretation as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, rather than simply applying his own brand of industrial justice." (*AFSCME,* 130 Pa. Commw. at 584, 568 A.2d at 1356.) Consistent with that limitation on our authority, we have developed only those portions of the record which either establish or fail to establish the factors which the arbitrator never addressed as required under existing Pennsylvania law.

We have concluded the arbitrator's award is contrary to law. We also conclude the arbitrator's award is subject to our grant of judgment n.o.v. for the failure to apply the applicable standard. Accordingly, both prongs of the standard for review established in title 42 Pa.C.S. §7302(d)(c) have been met.

We believe we have applied the law correctly. However, we urge adoption of the Daugherty test if, in fact, the court concludes it has not already done so. We see nothing but positives from its application in these situations. All fact-finders, irrespective of their discretion as provided by law, benefit from a set standard guiding that

discretion. The Daugherty test controls what might otherwise become a "sea of equity" by establishing fair and measurable criteria by which one may view the factual scenario weighed against the employer's policies and the employee's record. It constrains the considerable discretion afforded arbitrators as fact-finders not at all—rather, it properly defines it. Notwithstanding our belief the Commonwealth Court has already adopted the test, we urge its adoption should they conclude otherwise.

We are similarly satisfied the application of the Daugherty test assists a common pleas court in its appropriate review under title 42. In deciding whether or not an award is contrary to law, the test provides a legal standard for the reviewing court. At the same time, it leaves intact the broad discretion afforded to arbitrators given the high standard required for reversal by the common pleas court. For all these reasons, we see arbitrators and reviewing courts benefiting from adoption of the Daugherty test. Accordingly, and consistent with the discussions above, we enter the following:

## ORDER

And now, March 9, 2000, the decision of the arbitrator is set aside and reversed and the district (Greater Altoona Career and Technology Center) shall reinstate Mr. Kenneth C. Frederick with full back pay, interest, reimbursement for lost benefits, and otherwise made whole, consistent with his employment as a school teacher in the Altoona Area School District. This relief is fashioned to be compensatory rather than punitive. We find in this case a failure to establish good cause under the applicable legal standard. As such, plaintiff's request for compensatory damages is appropriate.