**CITY OF JOHNSTOWN/REDEVELOPMENT AUTHORITY, Appellant,**

v.

**UNITED STEEL WORKERS OF AMERICA, LOCAL 14354 and Grievant.**

Commonwealth Court of Pennsylvania.

Argued Nov. 19, 1998.

Decided Feb. 25, 1999.

Carl P. Beard, Altoona, for appellant.

John W. Smart, Pittsburgh, for appellee.

Before PELLEGRINI, J., KELLEY, J., and NARICK, Senior Judge.

KELLEY, Judge.

The City of Johnstown/Redevelopment Authority (City) appeals from the April 27, 1998 order of the Court of Common Pleas of Cambria County (trial court). The trial court's order sustained the preliminary objections filed by the United States Steelworkers of America, Local 14354 (USWA), in response to the City's petition for review and an application to vacate an arbitrator's award. We affirm.

The City employed William Gabornek (Grievant) as a chief mechanic/electrician. On May 30, 1996, Grievant filed a report of occupational injury claiming that he sustained injuries to his neck, shoulder and elbow while working at the City's sewage treatment plant. Grievant initially treated with the City's designated physician, Robert Plummer, M.D. Dr. Plummer referred Grievant to Ian Katz, M.D. who released Grievant to return to work on July 19, 1996. After being granted final clearance by Dr. Plummer, Grievant returned to work as a painter on July 22, 1996. Grievant continued in this capacity until November 25, 1996 when he alleged a recurrence of his work injury. Dr. Plummer reevaluated Grievant's physical status and again referred him to Dr. Katz who determined that Grievant should not be working.

In the interim, the City's workers' compensation insurance administrator assigned a surveillance crew to monitor Grievant's activities. On January 30, 1997, Grievant was observed attending a volleyball game. Although Grievant did not participate in the game that evening, the videotape revealed that he threw and punched a volleyball back onto the court using his allegedly injured right arm.

Grievant attended a physical therapy session the next day where he complained of pain in his right elbow and trapezius area. Grievant told the physical therapist that he strained his elbow while pouring a pitcher of beer, but did not mention throwing or hitting a volleyball the previous evening.

Following a medical examination on February 6, 1997, Dr. Katz released Grievant to work without restrictions. Dr. Katz indicated that his release encompassed Grievant's ability to participate in non-work activities. That evening Grievant fully participated in a volleyball match which the surveillance team videotaped.

The following day Dr. Plummer examined Grievant who presented with pain in the right trapezius area and the right elbow. Based on the examination, Dr. Plummer released Grievant to light duty work.[1] The doctor testified that Grievant did not mention to him or the interviewing nurse that Grievant played volleyball the previous evening. After Dr. Plummer viewed the videotape of claimant playing volleyball, he stated that Grievant used his right elbow in a normal manner without evidence of discomfort. In addition, the doctor noted that Grievant's activities contradicted the history and complaints presented by Grievant at the February 7, 1997 examination.

Grievant eventually returned to work on March 10, 1997 and signed a Final Release of his workers' compensation claim. On March 18, 1997, Grievant received written notification that he was to appear at a meeting to discuss the possible misrepresentation of his workers' compensation claim. Grievant attended the meeting with a union representative and maintained that he told Dr. Plummer about playing volleyball the night before the February 7, 1997 examination.

A second meeting took place on March 27, 1997, where the City presented Grievant with the information it had gathered. The City suspended Grievant without pay effective March 27, 1997 and ultimately discharged him. The matter proceeded to an arbitrator who sustained the grievance on the basis that the City lacked "just cause" to terminate Grievant. The arbitrator specifically noted that the City failed to establish that Grievant engaged in withholding important information leading to the fraudulent receipt of workers' compensation benefits. Rather, Grievant provided both physicians with the same information regarding his elbow and, based on the information, one physician re-

---

1. The City did not have light duty work available so it did not permit Grievant to return to work.

leased Grievant to full duty work while the other released Grievant to light duty work.

The City appealed the arbitrator's award by filing a petition for review and an application to vacate an arbitrator's award. Grievant and the USWA responded to the petition and application by filing preliminary objections. Before the trial court, the City argued that preliminary objections were an inappropriate response to the petition for review and the application to vacate arbitrator's award and that the arbitrator's award was manifestly unreasonable, in violation of public policy and not drawn from the terms of the collective bargaining agreement. The trial court denied the appeal by sustaining the preliminary objections and concluding that the arbitrator's decision drew its essence from the collective bargaining agreement and was not manifestly unreasonable. This appeal followed.

The City presents the following issues for our review: 1.) whether preliminary objections are an appropriate response to a petition for review and an application to vacate an arbitrator's award; and 2.) whether the arbitrator's decision failed to draw its essence from the terms of the collective bargaining agreement in effect between the parties.

■ In asserting that preliminary objections are an inappropriate response to a petition for review and an application to vacate arbitrator's award, the City notes that a petition for review and an application to vacate an arbitrator's award are not one of the enumerated pleadings listed in Pa.R.C.P. No. 1017. Furthermore, the City contends that because the petition for review and the application to vacate are more akin to an appeal

than a pleading, preliminary objections are not the proper procedure to challenge said petition and application. Although we agree with the City's assertion on this procedural point, we conclude that the trial court's error does not compel this court to reverse its order.[2]

In sustaining the preliminary objections, the trial court adjudicated the petition for review and application to vacate an arbitration award on the merits. The preliminary objections embodied the relevant issues presented in the petition and application and the trial court determined that, based on all of the facts presented, the arbitrator's award drew its essence from the collective bargaining agreement and was not manifestly unreasonable.[3] Thus, we will proceed to address the merits of the City's substantive issues.

■ It is well settled that an appellate court's scope of review of a grievance arbitration award is the "essence test." *Township of Penn v. American Federation of State, County and Municipal Employees, AFL–CIO, District Council No. 89*, 713 A.2d 1218 (Pa.Cmwlth.1998). We are limited under the essence test to determining whether the arbitrator's award can in any way be rationally derived from the collective bargaining agreement in light of the language of the agreement, its context and any other indicia of the parties intention. *Id.; School District of Springfield Township v. Springfield Township Educational Support Personnel Association*, 711 A.2d 602 (Pa.Cmwlth.1998). This court may not review the merits of the arbitrator's interpretation, nor may we substitute our judgment for that of the arbitrator, even if our interpretation of the collective bargaining agreement would differ from that of the

**2.** Pursuant to Pa. R.C.P. No. 1028, preliminary objections may be filed by any party in response to any *pleading*, but are limited to challenges to subject matter jurisdiction, specificity of the pleading, legal sufficiency of the pleading and for failure to conform to law, a rule of the court or inclusion of scandalous or impertinent matter. Because Pa. R.C.P. No. 1017 limits pleadings to a complaint, an answer, a preliminary objection and any replies to new matter raised in a prior pleading, the USWA's preliminary objections to the petition for review and application to vacate the arbitration award were inappropriate. In addition, we note that under 42 Pa.C.S. § 933(b),

Section 933(b) of the Judicial Code, the City's petition for review of an arbitrator's award is to be considered an appeal to the trial court. Because the USWA cannot object to a statutory appeal, preliminary objections are not applicable even though this is technically the initial judicial proceeding.

**3.** We note that each party submitted thorough, well-reasoned briefs with the trial court outlining their respective positions on the arbitrator's interpretation of the collective bargaining agreement.

arbitrator. *American Federation of State, County and Municipal Employees, District Council 88, AFL–CIO v. City of Reading,* 130 Pa.Cmwlth. 575, 568 A.2d 1352 (1990).

The primary issue presented to the arbitrator was whether the City had "just cause" to discharge Grievant. The only language which relates to just cause for discharge is included in Article XV, Section 3, of the Collective Bargaining Agreement which is entitled "Loss of Seniority." This section provides that an employee shall lose seniority and will be taken off the seniority list if he is discharged for just cause. In order to give effect to this provision of the collective bargaining agreement, the arbitrator initially had to make the legal determination as to whether just cause existed to discharge Grievant.

█ In addition to the collective bargaining agreement being bereft of any language defining just cause, we note that the record does not provide any supplemental material indicating how the parties intended just cause to be defined. In the absence of such an expression in the collective bargaining agreement or record, we must rely on the arbitrator's interpretation of just cause.[4] Because the arbitrator's interpretation is rationally derived from the terms of the collective bargaining agreement and is not manifestly unreasonable, we will not disturb it.[5]

The City also proposes that, once the arbitrator found that Grievant failed to mention to Dr. Plummer or the interviewing nurse at the February 7, 1997 examination that he played volleyball the prior evening, the arbitrator was required to conclude that just cause existed for Grievant's discharge. In support of this proposition, the City cites *Pennsylvania Liquor Control Board v. Inde-pendent State Store Union,* 520 Pa. 266, 553 A.2d 948 (1989) (*ISSU*), *Manheim Central Education Association v. Manheim Central School District,* 132 Pa.Cmwlth. 94, 572 A.2d 31, *petition for allowance of appeal denied,* 525 Pa. 661, 582 A.2d 326 (1990) (*Manheim Central*) and *Township of Penn.*

This matter is distinguishable from *ISSU* and *Township of Penn* in that the arbitrator in those cases determined that just cause *did exist* for the disciplinary action taken by employer. As a result, the court held that the arbitrator was precluded from modifying the penalty imposed by employer. Specifically, the Supreme Court stated in *ISSU:*

> Once it is established that the record reflects that there was 'just cause' for the action taken, the inquiry must close and the action of the agency must be accepted. Thus, if 'just cause' for the action was present, any further effort on the part of the arbitrator to disturb the agency's action cannot be said to flow from the essence of the bargaining agreement nor can it in any rational way be derived from that agreement.

553 A.2d at 952.

With regard to *Manheim Central,* we note that the arbitrator did not specifically determine whether just cause existed for the teacher's dismissal. Instead, the arbitrator concluded that the teacher engaged in immorality as defined by the Public School Code of 1949,[6] but that just cause did not exist for the penalty imposed. Again, we held that the arbitrator exceeded the authority established by the collective bargaining agreement when he fashioned an alternative remedy to the school district's disciplinary action even though the school district had just cause to take such action.

---

4. The arbitrator's authority to define "just cause" in this matter stems from the parties' negotiation of the collective bargaining agreement. *See School District of Springfield Township,* 711 A.2d at 604; *Upper St. Clair School District v. Upper St. Clair Educational Support Personnel Association,* 168 Pa.Cmwlth. 1, 649 A.2d 470, 472 n. 4 (1994); *and McKeesport Area School District v. McKeesport School Service Personnel Association,* 137 Pa.Cmwlth. 28, 585 A.2d 544 (1991).

5. In concluding that just cause did not exist to discharge Grievant, the arbitrator stated that the City did not present "evidence that the Grievant was malingering or intentionally falsified his condition to continue his workers' compensation instead of reporting for work." Arbitrator's Opinion at 10. The arbitrator specifically noted that Dr. Katz had not placed any restrictions on Grievant's activities after the February 6, 1997 examination. *Id.* So the fact that Grievant played volleyball that same evening is of minimal significance.

6. Act of March 10, 1949, P.L. 30, *as amended,* 24 P.S. §§ 1–101–27–2702.

Unlike the cited case law, the arbitrator *in* this matter did not modify the penalty imposed by the City because the arbitrator concluded that just cause *did not exist* for the City's discharge of Grievant. As previously stated, this interpretation is rationally derived from the terms of the collective bargaining agreement and will not be disturbed by this court.

Accordingly, the order of the trial court is affirmed.

### *ORDER*

AND NOW, this 25th day of February, 1999, the order of the Court of Common Pleas of Cambria County, at CIV. No. 828 of 1998, dated April 27, 1998, is affirmed.