984 So.2d 1153 (2006)
MADISON COUNTY BOARD OF EDUCATION
v.
Laura WILSON.
2050222.
Court of Civil Appeals of Alabama.
August 11, 2006.
*1154 Cynthia K. Thompson of Johnston, Moore, Maples & Thompson, Huntsville, for appellant.
Stan McDonald, Huntsville; Frederick L. Fohrell and Robert C. Lockwood of Wilmer & Lee, P.A., Huntsville; and Sam Heldman of Gardner, Middlebrooks, Gibbons, Kittrell, Olsen, Walker & Hill, P.C., Washington, D.C., for appellee.
David R. Boyd, Dorman Walker, and JoClaudia Moore of Balch & Bingham, LLP, Montgomery, for amicus curiae Alabama Association of School Boards, in support of the appellant.
Gregory B. Stein of Stein, Brewster & Pilcher, L.L.C., Mobile, for amicus curiae Alabama Education Association, in support of the appellee.
THOMPSON, Judge.
Laura Wilson was a tenured teacher who was employed by the Madison County Board of Education ("the Board") pursuant to an employment contract. Wilson served as a physical-education teacher at Buckhorn High School ("the school") for approximately seven years. Wilson also received supplemental income in addition to the salary provided pursuant to her teaching contract to compensate her for coaching the junior-varsity and varsity cheerleading squads at the school during the years she was employed at the school.
In December 2004, in response to a complaint initiated by a parent ("the parent") of one of the cheerleaders, the Board began investigating certain charges against Wilson; those charges pertained primarily to Wilson's performance as a cheerleading coach. As a result of that investigation, *1155 Elam Ray Swaim, the superintendent of the Madison County School System, notified Wilson by letter dated March 11, 2005, of his intention to recommend that the Board cancel Wilson's employment contract. Wilson appeared at a hearing before the Board. On April 7, 2005, the Board terminated Wilson's employment.
Wilson appealed pursuant to § 16-24-10 of the Teacher Tenure Act, § 16-24-1 et seq., Ala.Code 1975, which has been recently amended by Act No. 566, Ala. Acts 2004. After receiving ore tenus and documentary evidence, a hearing officer entered a decision on November 18, 2005, in which he made a number of factual findings, reversed the Board's termination decision, and ordered that Wilson be returned to her teaching position; the hearing officer did not order that Wilson receive any form of discipline. The Board appealed to this court pursuant to § 16-24-10(b), Ala.Code 1975.
The Board raises a number of issues in its brief on appeal, including an argument that the evidence did not support the hearing officer's decision and argument that the hearing officer applied incorrect legal standards. We conclude that the Board is correct that the hearing officer applied the wrong legal standards in reaching its decision. Accordingly, we resolve this appeal on a legal theory, and, therefore, a detailed recitation of the facts in this matter is not necessary.
In his March 11, 2005, letter informing Wilson that he intended to recommend the cancellation of Wilson's teaching contract, Swaim alleged that Wilson's employment should be terminated on the grounds of "insubordination, neglect of duty, failure to perform duties in a satisfactory manner, or other good and just cause." See § 16-24-8, Ala.Code 1975 (providing for the cancellation of a tenured teacher's employment contract for those and other reasons). In support of those allegations, Swaim set forth 14 separate charges that formed the bases of his recommendation to cancel Wilson's teaching contract. Those charges were the result of the investigation initially instigated by the parent; however, approximately one-half of those charges did not arise from the parent's complaints but were discovered during the course of the investigation. The 14 charges were as follows:
"1. Accepting the coaching supplement for junior varsity cheerleading at Buckhorn High School, while allowing Cassie Watson to function as junior varsity coach for approximately 3½ years.
"2. Arranging for Cassie Watson to coach the junior varsity squad at your gym after school in January of 2005 after being directed to stop.
"3. Operating a personal gymnastics business for profit in the gymnasium of Buckhorn High School during the summer of 2003 and from February 2004 to October/November 2004.
"4. Altering the payee on a check or checks made payable to Buckhorn High School by marking through Buckhorn High School and adding your name and depositing those check(s) into your personal account.
"5. Failing to comply with federal and state regulations or laws on students' daily access to the lunchroom and continuing to do so after directives were issued to the school.
"6. Charging a non-refundable usage fee to Buckhorn High School cheerleaders in violation of Madison County Board of Education policy.
"7. Use of a demerit system, which excessively punishes students who miss practice in violation of Madison County Board of Education policy.

*1156 "8. Inconsistent punishment of students in the assessment of demerits and the award of free demerit passes.
"9. Overcharging some students and undercharging other students who participate on the competitive cheerleading squad.
"10. Use of cheerleader funds to pay expenses of individuals who are not the sponsor or a member of the squads to attend National Competitions.
"11. Violations of the Madison County Board of Education's fundraiser policy by having a greater number of fundraisers than allowed by Madison County Board of Education policy.
"12. Failure to follow the Local School Accounting Manual and board policy as related to receipts and disbursements from the cheerleader funds for the past 2 years.
"13. Removal of [the parent's child] from the junior varsity competitive squad for non-payment when another student was allowed to pay late and wasn't required to pay the full amount.
"14. Loss of $5,970 in cheerleader funds during the 2003-2004 school year."
In his November 18, 2005, decision, the hearing officer purported to address the evidence pertaining to, and his decision regarding, each of the 14 separate charges. We note, however, that the hearing officer failed to specifically address charge number 8 and, arguably, charge number 12. The hearing officer concluded that a number of the above-listed charges were valid, but he excused a number of those offenses by concluding that Wilson had not been aware of rules or regulations prohibiting the conduct and that the principal of the school at which Wilson was employed had, or appeared to have had, knowledge of some of the problems. For the purposes of resolving this appeal, we have not addressed whether those findings are supported by the evidence.
Section 16-24-10(b), Ala.Code 1975, a part of the Teacher Tenure Act, provides that "[t]he decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of this article. We agree with the Board that the hearing officer failed to apply the applicable law to the facts in this case and, therefore, that his decision was arbitrary and capricious.
In reaching his decision in this case, the hearing officer determined, in part, that there was no dispute that the Board had proven charge number 3. The hearing officer concluded that Wilson had, as is alleged in charge number 3, used the school gymnasium to operate a for-profit business. As the hearing officer concluded, "[t]he Constitution, the Code of Alabama[[1]] was violated. No question thereon exists."
However, the hearing officer then determined that other questions remained that were pertinent to the resolution of whether charge number 3 was a valid basis for seeking the cancellation of Wilson's teaching contract. Specifically, the hearing officer questioned "[1] whether [Wilson] hid the fact from her superiors, [2] [whether] others in the employ of the [Board are] acting or performing in a similar fashion, and [3] [whether Wilson is] the *1157 only one guilty of Code of Alabama violations." After a lengthy discussion, the hearing officer determined that other cheerleading coaches had also run for-profit businesses from their schools' gymnasiums by charging students or the general public for private lessons conducted on school property; we note that that factual finding is not supported by the evidence in the record.[2]
More importantly, those additional inquiries conducted by the hearing officer are not relevant to whether charge number 3 was a valid basis for canceling Wilson's teaching contract. In considering those additional matters, the hearing officer effectively created a new standard for determining whether a teacher should be held accountable for his or her actions. In essence, the hearing officer determined that a teacher could not be held responsible for any violation that might also have been committed by another Board employee. Pursuant to that purported standard, it would be virtually impossible to find any teacher at fault or responsible for his or her conduct under similar circumstances. By way of an analogy, we note that one may not defend an offense such as a traffic violation by arguing that other drivers were also guilty of that violation but were not caught or charged. The hearing officer erred in determining that Wilson had violated the law by using school property to conduct a for-profit business but conducting additional inquiries regarding whether other employees might be guilty of the same conduct in order to excuse Wilson's actions.
The Board also argues that the hearing officer improperly created a new standard for determining whether "other good and just cause" existed for the cancellation of a tenured teacher's employment contract pursuant to the Teacher Tenure Act. We agree. In his decision, the hearing officer maintained that the parties agreed that the issues before him should be framed as "[d]id the [Board] have just cause to terminate the employment contract of [Wilson]?" and "[i]f not, what shall the remedy be?" Given the parties' agreement to the admission into evidence of the relevant provisions of the Teacher Tenure Act and the parties' references to that act during the discussion of the questions to be resolved by the Board, we do not necessarily agree with the conclusion that the parties stipulated that the primary issue before the hearing officer was whether the Board had "other good and just cause" to cancel Wilson's teaching contract. The hearing officer, in reaching his decision, based the decision on his determination that there was no "just cause" for the cancellation of Wilson's teaching contract. However, the hearing officer also stated that the November 18, 2005, decision was also intended to address the other grounds set forth in the March 11, 2005, letter and prosecuted by the Board during the hearing of this matter.
As stated earlier in this opinion, under the Teacher Tenure Act, a tenured teacher's employment contract may be cancelled for, among other reasons, "other good and just cause." § 16-24-8, Ala.Code 1975. *1158 This court has addressed that basis for the cancellation of a contract by stating:
"Although no Alabama court has provided a detailed definition of `other good and just cause,' [under Alabama's Teacher Tenure Act,] 68 Am.Jur.2d Schools § 183 states:
"` . . . Indeed, it has been said . . . "good cause" in a statute of this kind [the Teacher Tenure Act] is by no means limited to some form of inefficiency or misconduct on the part of the teacher dismissed, but includes any ground put forward by a school committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee's task of building up and maintaining an efficient school system. Limited only by the statutory provision that they must be good and just causes, the jurisdiction and discretion to determine what these causes may be rests in the hands of the school authorities.'"
Ellenburg v. Hartselle City Bd. of Educ., 349 So.2d 605, 609-10 (Ala.Civ.App.1977) (emphasis added). That definition of "other good and just cause" has been cited with approval by our supreme court in Laidlaw Transit, Inc. v. Alabama Education Ass'n, 769 So.2d 872, 884 n. 4 (Ala. 2000), and Ex parte Alabama State Tenure Commission, 555 So.2d 1071, 1074 (Ala. 1989), and by this court in Combs v. Wade, 957 So.2d 464, 475 (Ala.Civ.App.2005), and Rogers v. Alabama State Tenure Commission, 372 So.2d 1313, 1313-14 (Ala.Civ. App.1979).
The hearing officer did not refer to the above-cited cases that define "other good and just cause" under Alabama's Teacher Tenure Act. In reaching his determination, the hearing officer applied a different standard, stating:
"Many years ago, back in the 1980's, arbitrator Carroll R. Daugherty put forth a set of seven tests to determine whether or not `just cause' did or did not exist. The seven tests, all of which required an affirmative answer in order to establish `just cause,' has become the standard under which most arbitrators operate. Said questions take the following form:
"1. Did the employer give to the employee forewarning of possible or probable consequences of the employee's conduct?
"2. Was the employer's rule or managerial order reasonably related to the orderly, efficient and safe operation of the employer's business and the performance that the employer might properly expect of the employee?
"3. Did the employer, before administering the discipline, make an effort to discover whether the employee did in fact violate or disobey a rule or order of management?
"4. Was the employer's investigation conducted fairly and objectively?
"5. At the investigation was substantial evidence or proof obtained that the employee was guilty as charged?
"6. Has the employer applied its rules, orders and penalties even-handedly and without discrimination to all employees?
"7. Was the degree of discipline administered by the employer in a particular case reasonably related to the seriousness of the employee's proven offenses and the record of the employee in his service to the employer?
"A `NO' answer to any one or more of the questions was considered an indication that just cause either was not satisfied or at least was weakened in that some arbitrary, capricious or discriminatory element was present."
*1159 The seven-part test applied by the hearing officer was formulated by an arbitrator who, given the nature of the cases in which he is mentioned, seems to have established a test for determining "just cause" in the context of disputes concerning discipline under a collective-bargaining agreement. See Summit County Children Servs. Bd. v. Communication Workers of America (No. 22697, Feb. 1, 2006) (Ohio Ct.App.2006) (not reported), appeal accepted for review, 109 Ohio St.3d 1505, 849 N.E.2d 1027 (2006) (table); American Fed'n of State, County & Mun. Employees, Dist. Council 88, AFL-CIO v. City of Reading, 130 Pa. Commw. 575, 568 A.2d 1352 (1990); Greater Altoona Career & Tech. Ctr. Educ. Ass'n v. Greater Altoona Career & Tech. Ctr., 46 Pa. D. & C. 4th 115 (2000); see also Conoco, Inc. v. Oil, Chem. & Atomic Workers Int'l Union, 26 F.Supp.2d 1310 (N.D.Okla.1998) (citing test as established by arbitrator Carroll Daugherty in Whirlpool Corp. v. International Union of Elec., Radio, & Mach. Workers Local 808, 58 Lab. Arb. (BNA) 421 (1972)). In cases involving a collective-bargaining agreement, the decision of the arbitrator is not to be overturned if it draws "its essence from the collective bargaining agreement." Summit County Children Servs. Bd. v. Communication Workers of America, supra; and American Fed'n of State, County & Mun. Employees, Dist. Council 88, AFL-CIO v. City of Reading, 130 Pa. Commw. at 580, 568 A.2d at 1354. However, an arbitrator may determine the issue of "good cause" when that phrase is not defined in the collective-bargaining agreement, but the arbitrator must apply the applicable legal standard in reaching its decision. Greater Altoona Career & Tech. Ctr. Educ. Ass'n v. Greater Altoona Career & Tech. Ctr., supra.
This case does not involve a collective-bargaining agreement, and the phrase "other good and just cause" is not defined in the teaching contract between Wilson and the Board. Rather, Alabama's Teacher Tenure Act governs the cancellation of Wilson's employment contract. That act provides that a teacher's employment contract may be cancelled for, among other reasons, "other good and just cause." § 16-24-8, Ala.Code 1975. The phrase "other good and just cause" is defined under Alabama caselaw. See Ellenburg v. Hartselle City Bd. of Educ., supra. Although the recent enactment of Act No. 566, Ala. Acts 2004, created some changes in the Teacher Tenure Act, those changes did not establish a definition of the phrase "other good and just cause," nor did those changes affect the prior caselaw addressing that phrase. In enacting those changes to the Teacher Tenure Act, the Alabama legislature is presumed to have had knowledge of the courts' construction of the phrase "other good and just cause" and, in failing to modify that definition statutorily, is presumed to have adopted it. Holcomb v. Carraway, 945 So.2d 1009, 1020 (Ala.2006) (quoting Ex parte Fontaine Trailer Co., 854 So.2d 71, 83 (Ala. 2003), quoting in turn other cases) ("`"`It is a settled rule that in the adoption of the Code the Legislature is presumed to have known the fixed judicial construction pre-existing statutes had received, and the substantial re-enactment of such statutes is a legislative adoption of that construction.'"'"); Mobile Infirmary Med. Ctr. v. Hodgen, 884 So.2d 801, 814 (Ala.2003) ("The Legislature, when it enacts legislation, is presumed to have knowledge of existing law and of the judicial construction of existing statutes."); and Blue Cross & Blue Shield of Alabama, Inc. v. Nielsen, 714 So.2d 293, 297 (Ala.1998) ("It is a familiar principle of statutory interpretation that the Legislature, in enacting new *1160 legislation, is presumed to know the existing law.").
In this case, the hearing officer should have applied Alabama's Teacher Tenure Act in determining whether the Board improperly canceled Wilson's teaching contract. In applying the seven-part test adopted from other jurisdictions' standards of review pertaining to collective-bargaining agreements, the hearing officer failed to properly apply the law, i.e., the Teacher Tenure Act, to the facts of this case. Therefore, we reverse the hearing officer's decision and remand the cause for the parties to conduct another hearing consistent with the provisions of the Teacher Tenure Act. See § 16-24-10, Ala.Code 1975 ("The decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of this article.").
We note that the Board argues that the hearing officer erred in admitting into evidence all of Wilson's documentary evidence because, it contends, Wilson failed to comply with the rules governing discovery under the Teacher Tenure Act. The Teacher Tenure Act requires that the parties provide, at least 30 days before the scheduled hearing, both the hearing officer and the opposing party a copy of all evidence to be submitted as exhibits. § 16-24-10(a), Ala. Code 1975. We do not condone Wilson's delay in complying with § 16-24-10(a), but, given this court's holding ordering that the parties conduct a new hearing, we pretermit any discussion of that issue.
REVERSED AND REMANDED WITH INSTRUCTIONS.
BRYAN, J., concurs.
PITTMAN, J., concurs specially, with writing, which CRAWLEY, P.J., joins.
MURDOCK, J., concurs in the result, with writing.
PITTMAN, Judge, concurring specially.
Under amendments to §§ 16-24-10(b), XX-XX-XXX(b), and XX-XX-XXX(b), Ala.Code 1975, effective July 1, 2004, this court is granted "discretion to refuse to hear appeals of final decisions of a hearing officer" as to discipline of educational employees, and we are instructed therein that leave to review such decisions "may be granted only when the court determines there are special and important reasons for granting the appeal" (emphasis added). Plainly, under the 2004 amendments, appellate review of decisions of hearing officers granting or denying relief to aggrieved educational employees was meant to be extraordinarily rare. However, this court, if this case is included, has already accepted and decided three appeals under our discretionary power. See Board of Sch. Comm'rs of Mobile County v. Dunn, 962 So.2d 805 (Ala.Civ.App.2006), and Scott v. Bevill State Cmty. College (No. 2041071, June 23, 2006), ___ So.2d ___ (Ala.Civ.App.2006) (table).
Although the relative novelty of the amendments might itself supply a "special and important reason" for the grant of review in a certain small number of early cases (such as this one), we must be careful not to thereby transform the discretionary-review process set forth in those amended statutes into one that amounts to de facto review as of right. For better or worse, the executive and legislative branches of Alabama's government have directed this court to disturb the decisions of hearing officers in such cases only upon the presentation of reasons that are both "important" and "special." In keeping with the lesson imparted to the Aesop's *1161 shepherd boy in Aesop's Fables who cried "Wolf!", an appellate court so directed would do well to take care not to invoke such a review power too often; otherwise, the exception would threaten to engulf the rule and arguably defeat the intention of the "special and important reasons" standard, i.e., to make the review process "easier, quicker, and cheaper." Press Release, Governor Bob Riley, "Governor Riley Adds Amendments to Tenure Reform Bill" (May 17, 2004).[3]
CRAWLEY, P.J., joins.
MURDOCK, Judge, concurring in the result.
Like the main opinion, I conclude that the hearing officer's failure to apply applicable law made his decision "arbitrary and capricious." I nonetheless concur only in the result reached by the main opinion because I am not persuaded that all of the so-called "additional inquiries" made by the hearing officer are irrelevant to the issue of whether the Board had "good and just cause" for terminating Wilson's employment.
NOTES
[1] Section 36-25-5(c), Ala.Code 1975, provides:

"No public official or public employee shall use or cause to be used equipment, facilities, time, materials, human labor, or other public property under his or her discretion or control for the private benefit or business benefit of the public official [or] public employee. . . . "
[2] The record indicates only that other cheerleading coaches required that cheerleaders budget certain amounts of money for required gymnastics or tumbling classes. There was no evidence indicating that those extra classes were conducted by the coaches, no evidence indicating that the coaches received the payments for those classes, and no evidence regarding where those classes were conducted. Even assuming that those classes were conducted on school property and payment was made directly to the coaches, there was no evidence regarding whether the coaches paid the school for the use of the facilities, as is required by Board regulations.
[3] On August 11, 2006, the date this opinion was released, a copy of this press release could be found at http://www.governorpress. alabama.gov/pr/pr-2004-05-17-01-tenure.asp (a copy of the press release is also available in the case file of the clerk of the Alabama Court of Civil Appeals).