STUART, Justice.
This case involves interpretation of certain provisions of the Alabama Teacher Tenure Act, § 6-24-1 et seq., Ala.Code 1975, as amended by Act No. 2004-566, Ala. Acts 2004. This Court granted the petition for the writ of certiorari to review the decision of the Court of Civil Appeals in light of these changes to the statute.
Laura Wilson, a tenured teacher, taught physical education and served as the cheerleading sponsor for the junior varsity and varsity cheerleading squads at Buck-horn High School, which is in the district of the Madison County Board of Education (“the Board”). After a parent whose child had been removed from the squad filed a complaint, the superintendent of the Board conducted an investigation and decided there were grounds to terminate Wilson’s employment. In his March 11, 2005, letter informing Wilson that he intended to recommend the cancellation of Wilson’s teaching contract, the superintendent alleged that Wilson’s employment should be terminated on the grounds of “insubordination, neglect of duty, failure to perform duties in a satisfactory manner, or other good and just cause.” See § 16-24-8, Ala.Code 1975. In support of those allegations, the superintendent set forth 14 separate charges that formed the bases of his recommendation to cancel Wilson’s teaching contract. Those charges were the result of the investigation initially instigated by the complaining parent; however, approximately one-half of those charges did not arise from the parent’s complaint but were discovered during the course of the resulting investigation. The 14 charges were as follows:
“1. Accepting the coaching supplement for junior varsity cheerleading at Buckhorn High School, while allowing Cassie Watson to function as junior varsity coach for approximately 3½ years.
“2. Arranging for Cassie Watson to coach the junior varsity squad at your gym after school in January of 2005 after being directed to stop.
“3. Operating a personal gymnastics business for profit in the gymnasium of Buckhorn High School during the summer of 2003 and from February 2004 to October/November 2004.
“4. Altering the payee on a check or checks made payable to Buckhorn High School by marking through Buckhorn High School and adding your name and depositing those eheck(s) into your personal account.
“5. Failing to comply with federal and state regulations or laws on students’ daily access to the lunchroom and *1164 continuing to do so after directives were issued to the school.
“6. ■ Charging a non-refundable usage fee to Buckhorn High School cheerleaders in violation of Madison County Board of Education policy.
“7. Use of a demerit system, which excessively punishes students who miss practice in violation of Madison County Board of Education policy.
“8. Inconsistent punishment of students in the assessment of demerits and the award of free demerit passes.
“9. Overcharging some students and undercharging other students who participate on the competitive cheerleading squad.
“10. Use of cheerleader funds to pay expenses of individuals who are not the sponsor or a member of the squads to attend National Competitions.
“11. Violations of the Madison County Board of Education’s fundraiser policy by having a greater number of fundraisers than allowed by Madison County Board of Education policy.
“12. Failure to follow the Local School Accounting Manual and board policy as related to receipts and disbursements from the cheerleader funds for the past 2 years.
“18. Removal of [the complaining parent’s child] from the junior varsity competitive squad for non-payment when another student was allowed to pay late and wasn’t required to pay the full amount.
“14. Loss of $5,970 in cheerleader funds during the 2008-2004 school year.”
The superintendent presented his recommendation to the Board, which conducted a conference, requested by Wilson, to determine if Wilson’s employment should be terminated. The Board, by a 4-0 vote, agreed with the superintendent’s recommendation to terminate Wilson’s employment. Wilson then requested and received a de novo hearing before an impartial hearing officer to contest the decision, pursuant to § 16-24-10(a), Ala.Code 1975. After receiving ore tenus and documentary evidence, the hearing officer entered a decision in which he made specific findings of fact, reversed the Board’s decision to terminate Wilson’s employment, and did not order any form of discipline for Wilson. The Board appealed the hearing officer’s decision to the Court of Civil Appeals, pursuant to Section 16-24-10(b), Ala.Code 1975. The Court of Civil Appeals reversed the decision of the hearing officer. Madison County Bd. of Educ. v. Wilson, 984 So.2d 1153 (Ala.Civ.App.2006). We affirm.

Legal Issues

Wilson presents several issues of first impression concerning the 2004 amendments to the Alabama Teacher Tenure Act, which implemented a new system for resolving disputes relating to the employment termination of tenured teachers.
“1. Under [the] limited scope of review provided by the Amended [Teacher Tenure] Act, can the Court of Civil Appeals restrict the ‘inquiries’ that may be conducted by arbitrators? [1]
“2. Did the Court of Civil Appeals err by finding that a hearing is for the purpose of ‘determining whether the Board improperly canceled’ a teacher’s contract?
“3. Did the Court of Civil Appeals err in determining that a ‘ground’ for commencing termination proceedings under Section 16-24-8 should have been uti *1165 lized by the arbitrator as the standard for rendering a decision under Section 16-24-10?
“4. Does the Court of Civil Appeals possess the power to reverse an arbitrator for failing to follow the applicable law?
“5. Could the Court of Civil Appeals reverse the arbitrator for applying an incorrect legal standard when the arbitrator was not in ‘manifest disregard of the law[1]?”
Wilson’s arguments in her brief essentially focus on her belief that the Court of Civil Appeals misconstrued the new administrative process for termination of employment established in the recent amendments to the Alabama Teacher Tenure Act.
Wilson first argues that the Alabama Court of Civil Appeals improperly applied standards from the Alabama Teacher Tenure Act as it existed before the 2004 amendment in reviewing this case because, she says, this case is governed by the Alabama Teacher Tenure Act, as amended in 2004 by Act No. 2004-566, which amended § 16-24-1 et seq., Ala.Code 1975 (“the new Act”). Specifically, Wilson asserts that four statements by the Court of Civil Appeals in its opinion are evidence that that court erroneously applied standards from the Alabama Teacher Tenure Act as it read prior to its amendment in 2004 (“the old Act”) in reversing the hearing officer’s decision:
“1. ‘On April 7, 2005, the Board terminated Wilson’s employment.’ [984 So.2d at 1155.] Under Section 16-24-9, the Board possesses no power to terminate anybody. Instead, the Board can decide that a cancellation should be ‘effectuated,’ but only the arbitrator [hearing officer] can render a decision on cancellation.
“2. ‘Wilson appealed pursuant to § 16-24-10 of the Teacher Tenure Act .... ’ [984 So.2d at 1155.] The hearing before the arbitrator is not an ‘appeal.’ Instead, it is a ‘de novo hearing,’ where evidence is presented. The only discussion of an ‘appeal’ in the new Act is the authorization of an appeal to the Court of Civil Appeals. Ala.Code § 16-24-10(b).
“3. ‘[H]e made a number of factual findings, reversed, the Board’s termination decision, and ordered that Wilson be returned to her teaching position .... ’ [984 So.2d at 1155] (emphasis added). Nothing in the New Act talks about affirming or reversing, because the arbitrator [hearing officer] is not conducting an appeal. Instead, the arbitrator conducts a ‘de novo hearing’ and decides in the first instance what ‘actions [if any] should be taken relative to the employee.’ Ala.Code § 16-24-10(a).
“4. ‘In this case, the hearing officer should have applied Alabama’s Teacher Tenure Act in determining whether the Board improperly canceled Wilson’s teaching contract.’ [984 So.2d at 1160] (emphasis added). As discussed above, the Board does not possess the power to cancel a contract. Only the hearing officer possesses that power.”
(Wilson’s brief at 22-24.)
The Board responds that Wilson has focused only on part of § 16-24-10(a) and has overlooked § 16-24-8, the grounds for termination; § 16-24-9, the procedure for cancellation of contracts; and other parts of § 16-24-10, the appeal of the decision of the board of education to a hearing officer. The Board further points out that county boards of education are given the authority to appoint and remove teachers in § 16 — 8— 23, Ala.Code 1975, subject to the teacher’s tenure rights in Chapter 24 of Title 16.
*1166 Section 16-24-8, Ala.Code 1975,[2] sets forth the statutory grounds for canceling an employment contract with a teacher on continuing-service status, that is, a “tenured teacher”: “incompetency, insubordination, neglect of duty, immorality, failure to perform duties in a satisfactory manner, justifiable decrease in the number of teaching positions or other good and just cause, but cancellation may not be made for political or personal reasons.”
Section 16-24-9 states: “(a) An employment contract with a teacher on continuing service status may be cancelled only in the following manner ....” The section goes on to provide the process for giving notice to the employee and the procedure by which to request a conference with the board before the board votes on the superintendent’s recommendation. The statute provides that after the conference “the board shall determine whether such cancellation shall be effectuated.” § 16-24-9(a), Ala.Code 1975. Section 16-24-9(b) provides that “[rjegardless of whether or not the employee elects to have a conference with the employing board, if the board votes to cancel the teacher’s contract, the superintendent shall give notice to the teacher....” The remainder of the section provides the process of notifying the teacher of the employing board’s decision and the process by which the teacher can “contest the board’s decision.” If no contest is filed, “the board’s decision shall be final.” § 16-24-9(b), Ala.Code 1975. Likewise, if the employing board votes not to follow the superintendent’s recommendation, the teacher’s contract cannot be canceled. Clearly, a board of education does possess the power to cancel a tenured teacher’s contract under the new Act.
Wilson objects to the Court of Civil Appeals’ use of the word “appeal” with reference to a teacher’s right to “contest the board’s decision” at a hearing before a hearing officer. Although the word “contest” might be more precise, the action taken is an “appeal” in the general sense of subjecting the board’s decision to review by the hearing officer. Further, the Court of Civil Appeals recognized that the hearing was de novo when it used the language “after receiving ore tenus and documentary evidence” in its opinion. 984 So.2d at 1155.
Wilson argues that the Court of Civil Appeals erred when it stated that the hearing officer “reversed the Board’s termination decision.” 984 So.2d at 1155. She reiterates her argument that a board has no authority to cancel or terminate a tenured teacher’s contract. This position, however, is incorrect.
Section 16-24-10(a) mandates that the hearing officer “determine which of the following actions should be taken relative to the employee: Cancellation of the employment contract, a suspension of the employee, with or without pay, a reprimand, other disciplinary action, or no action against the employee.” The Board in its brief to this Court recognizes this authority, as does the Court of Civil Appeals in its opinion. When a hearing officer chooses an option other than the cancellation voted for by a board of education, the hearing officer has “reversed the decision” of the board.
Wilson asks this Court to address the following specific questions:
“Did the Court of Civil Appeals err by finding that a hearing is for the purpose of ‘determining whether the Board improperly canceled’ a teacher’s contract? “Did the Court of Civil Appeals err in determining that a ‘ground’ for commencing termination proceedings under *1167 Section 16-24-8 should have been utilized by the arbitrator as the standard for rendering a decision under Section 16-24-10?
“Does the Court of Civil Appeals possess the power to reverse an arbitrator for failing to follow the applicable law?
“Could the Court of Civil Appeals reverse the arbitrator for applying an incorrect legal standard when the arbitrator was not in ‘manifest disregard of the law1?”
Each of these questions requires that we first answer the threshold question: What law shall the hearing officer apply in conducting a de novo hearing and rendering a decision?
Section 16-24-10(a) provides, in pertinent part:
“The hearing officer shall conduct a de novo hearing and shall render a decision based on the evidence and/or information submitted to the hearing officer. The hearing officer shall determine which of the following actions should be taken relative to the employee: Cancellation of the employment contract, a suspension of the employee, with or without pay, a reprimand, other disciplinary action, or no action against the employee. The hearing officer shall render a written decision, with findings of fact and conclusions of law, within 30 days after its hearing.”
Section 16 — 24—10(b), Ala.Code 1975, a part of the new Act, provides that “[a]ll appeals of a final decision of the hearing officer shall lie with the Alabama Court of Civil Appeals” and that “[t]he decision of the hearing officer shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious, in which case the court may order that the parties conduct another hearing consistent with the procedures of this article.” The Court of Civil Appeals found that the hearing officer failed to apply the applicable law to the facts of this case; therefore, it reasoned, his decision was arbitrary and capricious, and a new hearing was required.
As an example, the Court of Civil Appeals noted that the hearing officer found that there was no dispute that the Board had proven charge number 3 — that Wilson had used the school gymnasium to operate a for-profit gymnastics business— and that “ ‘the Constitution, and the Code of Alabama[3] was violated. No question thereon exists.’ ” 984 So.2d at 1156. The hearing officer went further, finding that questions remained as to whether charge number 3 was a valid basis for seeking the cancellation of Wilson’s teaching contract, specifically, “ ‘[1] whether [Wilson] hid the fact from her superiors, [2] [whether] others in the employ of the [Board are] acting or performing in a similar fashion, and [3] [whether Wilson is] the only one guilty of Code of Alabama violations.’ ” 984 So.2d at 1157. The Court of Civil Appeals agreed with the Board that the hearing officer improperly created a new standard for determining whether “other good and just cause” existed for the cancellation of a tenured teacher’s employment contract pursuant to the new Act. The Court of Civil Appeals stated:
“In' his decision, the hearing officer maintained that the parties agreed that the issues before him should be framed *1168 as ‘[d]id the [Board] have just cause to terminate the employment contract of [Wilson]?’ and ‘[i]f not, what shall the remedy be?’ Given the parties’ agreement to the admission into evidence of the relevant provisions of the Teacher Tenure Act and the parties’ references to that act during the discussion of the questions to be resolved by the Board, we do not necessarily agree with the conclusion that the parties stipulated that the primary issue before the hearing officer was whether the Board had ‘other good and just cause’ to cancel Wilson’s teaching contract. The hearing officer, in reaching his decision, based the decision on his determination that there was no ‘just cause’ for the cancellation of Wilson’s teaching contract. However, the hearing officer also stated that the November 18, 2005, decision was also intended to address the other grounds set forth in the March 11, 2005, letter and prosecuted by the Board during the hearing of this matter.
“As stated earlier in this opinion, under the Teacher Tenure Act, a tenured teacher’s employment contract may be canceled for, among other reasons, ‘other good and just cause.’ § 16-24-8, Ala. Code 1975. This court has addressed that basis for the cancellation of a contract by stating:
“ ‘Although no Alabama court has provided a detailed definition of “other good and just cause,” [under Alabama’s Teacher Tenure Act,] 68 Am. Jur.2d Schools § 183 states:
Indeed, it has been said ... ‘good cause’ in a statute of this kind [the Teacher Tenure Act] is by no means limited to some form of inefficiency or misconduct on the part of the teacher dismissed, but includes any ground put forward by a school committee in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant to the committee’s task of building up and maintaining an efficient school system. Limited only by the statutory provision that they must be good and just causes, the jurisdiction and discretion to determine what these causes may be rests in the hands of the school authorities.” ’
“Ellenburg v. Hariselle City Bd. of Educ., 349 So.2d 605, 609-10 (Ala.Civ.App.1977) (emphasis added). That definition of ‘other good and just cause’ has been cited with approval by our supreme court in Laidlaw Transit, Inc. v. Alabama Education Ass’n, 769 So.2d 872, 884 n. 4 (Ala.2000), and Ex parte Alabama State Tenure Commission, 555 So.2d 1071, 1074 (Ala.1989), and by this court in Combs v. Wade, 957 So.2d 464, 475 (Ala.Civ.App.2005), and Rogers v. Alabama State Tenure Commission, 372 So.2d 1313, 1313-14 (Ala.Civ.App.1979).
“The hearing officer did not refer to the above-cited cases that define ‘other good and just cause’ under Alabama’s Teacher Tenure Act. In reaching his determination, the hearing officer applied a different standard, stating:
“ ‘Many years ago, back in the 1980’s, arbitrator Carroll R. Daugherty put forth a set of seven tests to determine whether or not “just cause” did or did not exist. The seven tests, all of which required an affirmative answer in order to establish “just cause,” has become the standard under which most arbitrators operate. Said questions take the following form:
“ ‘1. Did the employer give to the employee forewarning of possible or probable consequences of the employee’s conduct?
*1169 “ ‘2. Was the employer’s rule or managerial order reasonably related to the orderly, efficient and safe operation of the employer’s business and the performance that the employer might properly expect of the employee?
“ ‘3. Did the employer, before administering the discipline, make an effort to discover whether the employee did in fact violate or disobey a rule or order of management?
“ ‘4. Was the employer’s investigation conducted fairly and objectively?
“ ‘5. At the investigation was substantial evidence or proof obtained that the employee was guilty as charged?
“ ‘6. Has the employer applied its rules, orders and penalties evenhandedly and without discrimination to all employees?
“ ‘7. Was the degree of discipline administered by the employer in a particular case reasonably related to the seriousness of the employee’s proven offenses and the record of the employee in his service to the employer?
“ ‘A “NO” answer to any one or more of the questions was considered an indication that just cause either was not satisfied or at least was weakened in that some arbitrary, capricious or discriminatory element was present.’
“The seven-part test applied by the hearing officer was formulated by an arbitrator who, given the nature of the cases in which he is mentioned, seems to have established a test for determining ‘just cause’ in the context of disputes
concerning discipline under a collective-bargaining agreement. See Summit County Children Servs. Bd. v. Communication Workers of America, (No. 22697, Feb. 1, 2006) (Ohio Ct.App.2006) (not reported), appeal accepted for review, 109 Ohio St.3d 1505, 849 N.E.2d 1027 (2006) (table); American Fed’n of State, County & Mun. Employees, Disk Council 88, AFL-CIO v. City of Reading, 130 Pa. Commw. 575, 568 A.2d 1352 (1990); Greater Altoona Career & Tech. Ctr. Educ. Ass’n v. Greater Altoona Career & Tech Ctr., 46 Pa. D. & C. 4th 115 (2000); see also Conoco, Inc. v. Oil, Chem. & Atomic Workers Int’l Union, 26 F.Supp.2d 1310 (N.D.Okla.l998)(cit-ing test as established by arbitrator Carroll Daugherty in Whirlpool Corp. v. International Union of Elect., Radio, & Mach. Workers Local 808, 58 Lab. Arb. (BNA) 421 (1972)). In cases involving a collective-bargaining agreement, the decision of the arbitrator is not to be overturned if it draws ‘its essence from the collective bargaining agreement.’ Summit County Children Servs. Bd. v. Communication Workers of America, supra; and American Fed’n of State, County & Mun. Employees, Disk Council 88, AFL-CIO v. City of Reading, 130 Pa. Commw. at 580, 568 A.2d at 1354. However, an arbitrator may determine the issue of ‘good cause’ when that phrase is not defined in the collective-bargaining agreement, but the arbitrator must apply the applicable legal standard in reaching its decision. Greater Altoona Career & Tech. Ctr. Educ. Ass’n v. Greater Altoona Career & Tech. Ctr., supra.”
984 So.2d at 1157-59.
Wilson and amicus curiae Alabama Education Association in support of Wilson,[4] *1170 urge us to reverse the judgment of the Court of Civil Appeals and uphold the findings of fact and conclusions of law of the hearing officer. They argue that the hearing officer’s authority under § 16-24-10 is virtually unlimited and that the hearing officer was free to adopt the legal standard from collective-bargaining cases because neither the new Act nor caselaw provided any guidance as to what law should be applied. Wilson also argues that, even if the hearing officer erred in adopting this standard from collective-bargaining cases as “the law” in this case, there was a complete absence of any law for the hearing officer to disregard in this case, because no Alabama appellate court had interpreted the new Act at the time the hearing officer rendered his decision. Thus, the hearing officer could not have manifestly disregarded the law; therefore, the Court of Civil Appeals had no authority to reverse his decision.
We disagree with the position taken by Wilson. The hearing officer has broad authority under the new Act. The hearing officer conducts a de novo hearing, that is, a completely new hearing. Based upon the evidence and/or information submitted at the hearing, the hearing officer determines which of the following actions should be taken relative to the employee: cancellation of the employment contract; suspension of the employee, with or without pay; a reprimand; other disciplinary action; or no action. § 16-24-10(a), Ala.Code 1975; Ex parte Dunn, 962 So.2d 814 (Ala.2007). No party disputes that the hearing officer has this authority. The hearing officer also has the responsibility of rendering, within 30 days of the hearing, a written decision with findings of fact and conclusions of law. The hearing officer’s final decision is subject to appeal to the Alabama Court of Civil Appeals and shall be affirmed on appeal unless the Court of Civil Appeals finds the decision arbitrary and capricious under § 16 — 24—10(b), Ala. Code 1975.
What law must the hearing officer apply in reaching his or her decision? He or she must apply Alabama law as set forth in the new Act and court decisions interpreting the new Act and provisions of the old Act that remain unchanged by the 2004 amendments.
Clearly, the hearing officer was not authorized to import employment law from collective-bargaining cases and, based upon those cases, to establish a new standard of “just cause for termination” of tenured teachers with certain principles such as like discipline of co-employees and “forewarning of possible or probable consequences of the employee’s conduct,” which are not required by either the old Act or the new Act.
Thus, we now answer the questions posed by Wilson. The Court of Civil Appeals did not err in finding the hearing officer’s action arbitrary and capricious and reversing his decision and ordering a new hearing. The Court of Civil Appeals does have the authority to reverse the decision of the hearing officer for failing to follow the applicable law, because the failure to follow the applicable law renders the hearing officer’s decision arbitrary and capricious. The Court of Civil Appeals did not err in finding that the hearing was for the purpose of “determining whether the Board improperly canceled” a teacher’s employment contract; a hearing officer must apply Alabama teacher-tenure law to the facts to determine whether the board improperly canceled the teacher’s contract. The new Act gives guidance as to the issues for decision by the hearing officer. Issues that may be considered include, but are not limited to: (1) Whether the evidence proves a ground or grounds asserted for cancellation of the teacher’s con *1171 tract; (2) Whether there are any improper motives for cancellations[5] under § 16-24-8, Ala Code 1975, such as political or personal reasons; and (3) Whether cancellation of the teacher’s employment contract or one of the other alternatives under § 16-24-10(a) is the appropriate penalty based upon the law and the facts.
We next address the question whether the Court of Civil Appeals erred in determining that one of the “grounds” for commencing termination proceedings listed in § 16-24-8 should have been used by the hearing officer as a reason for rendering a decision under § 16-24-10. After determining that the issue before him was “whether there was just cause for cancellation of the teacher’s contract,” the hearing officer incorrectly adopted from collective-bargaining cases a seven-part test for “just cause to terminate.” In addressing that error, the Court of Civil Appeals correctly noted that Alabama caselaw provides the definition for “other good and just cause” under § 16-24-8, Ala.Code 1975:
“Cancellation of an employment contract with a teacher on continuing service status may be made for incompetency, insubordination, neglect of duty, immorality, failure to perform duties in a satisfactory manner, justifiable decrease in the number of teaching positions or other good and just cause, but cancellation may not be made for political or personal reasons.”
 “Other good and just cause” in this section permits boards of education to cancel contracts of tenured teachers for reasons not enumerated in the section, provided the unenumerated reasons are good and just. This is the only use of “just cause” in the new Act. One of the hearing officer’s considerations will be whether one or more of the grounds asserted for termination is established by the evidence. The inquiry by the hearing officer will generally include the issues heretofore mentioned and may include others depending upon the circumstances of the case, but the hearing officer may not expand the inquiry beyond the bounds of Alabama teacher-tenure law.

Conclusion

The hearing officer’s application of standards of “just cause for termination” from collective-bargaining cases to Wilson’s case resulted in a decision that was arbitrary and capricious. Therefore, the Court of Civil Appeals correctly reversed his decision and remanded the case for a new hearing. We affirm its judgment. The new hearing shall be conducted pursuant to the provisions of the new Act.
AFFIRMED.
SEE, BOLIN, and PARKER, JJ., concur.
STUART, J., concurs specially.
LYONS, WOODALL, and SMITH, JJ., concur in part and concur in the result.
COBB, C.J., dissents.
MURDOCK, J., recuses himself.

. Wilson uses the term arbitrator throughout her brief to refer to the “hearing officer” referred to in the Alabama Teacher Tenure Act.

. Section 16-24-8, Ala.Code 1975, was not affected by Act No. 2004-566, Ala. Acts 2004.

. Section 36-25-5(c), Ala.Code 1975, provides:
"No public official or public employee shall use or cause to be used equipment, facilities, time, materials, human labor, or
other public property under his or her discretion or control for the private benefit of the public official [or] public employee
[[Image here]]

. The Alabama Association of School Boards also filed a brief as amicus curiae, in support of the Board.

. The existence of an improper motive for termination, a political or personal reason, is in the nature of a defense. The teacher asserting such a motive must place the motive "at issue” by specifically pleading the facts alleged to establish an improper motive.