PITTMAN, Judge.
 

 This discretionary appeal from an arbitration decision entered by a hearing officer in accordance with Ala.Code 1975, § 16-24-10(a), concerns the proposed non-renewal (termed a “partial cancellation”) by the Board of School Commissioners of the Mobile County school district (“the Board”) of the central-office employment of Gloria Glenn, a tenured teacher (“the teacher”), pursuant to the Board’s system-wide reduction in force (“RIF”), and its corresponding efforts to retransfer her to a teaching position.
 

 The record reveals that the teacher was first employed by the Board as an elementary-school teacher in 1980. Pursuant to Ala.Code 1975, § 16-24-2(a), the teacher attained continuing-service status, a status colloquially known as “tenure,” as a teacher by virtue of her having been reemployed by the Board for three consecutive years in that role. After a six-year stint working for the Board as a “Title I facilitator” and a reading-intervention specialist, the teacher was employed by the Board on June 19, 2006, as a “school improvement specialist,” a position that required her to be responsible for ensuring that particular schools are properly following federal guidelines applicable to educational subsidies received by the Board from the United States government. She was employed by the Board in that position during two academic years, 2006-07 and 2007-08.
 

 In
 
 Ex parte Oden,
 
 495 So.2d 664, 665 (Ala.1986), the Alabama Supreme Court made the following pertinent observations regarding tenure of teachers and other supervisory educational personnel:
 

 “A teacher who meets the requirements of [Ala.] Code 1975, § 16-24-2, attains continuing service status, which does not inhere in the particular teaching position the teacher holds at the time, but in the teacher. The teacher retains continuing service status through transfers and promotions.
 

 “A teacher who attains continuing service status as an instructor, § 16-24-2(a), retains that status upon promotion to ... supervisor, § 16-24-2(b). To earn continuing service status as a ... supervisor, an instructor must continue under contract in the new position for three years.... ‘[Supervisor’ tenure is in effect a second-level tenure.”
 

 The record reveals that in 2007 the Board determined that it would not be able to comply with a statutory requirement that it “develop a plan to establish
 
 *342
 
 and maintain a minimum reserve fund equal to one month’s operating expenses” (see Ala.Code 1975, § 16-13A-9(a)). In order for the Board to reduce its total outlays (of which 83 percent had consisted of personnel costs) to comply with that budgetary standard, the Board adopted its RIF, under which a number of teaching and administrative positions were eliminated.
 

 In early May 2008, two letters from the Board were hand delivered to the teacher. One of those letters, dated May 9, 2008, informed her that the Board’s superintendent intended to recommend “partial cancellation” of her employment in the Board’s central administration, citing, among other things, a “[justifiable decrease in the number of certified support positions in Central Administration pursuant to implementation of [the RIF] by the Board ... because of budgetary considerations.” Although that letter used the term “partial cancellation,” the letter further noted that the Board’s action was “not a performance-based decision” and that it was made “because of budgetary consideration
 
 for the 2008-2009 school year
 
 which influences your current position” (emphasis added). The teacher was informed that she would be afforded a conference with the Board regarding that recommendation by making a request for such a conference within 15 days of receiving the letter. The second letter, dated May 6, 2008, informed the teacher that the Board, on May 5, 2008, had approved the superintendent’s recommendation to transfer the teacher from her current position in central administration based upon a “[^Justifiable decrease in the number of certified support positions ... pursuant to implementation of reduction in force policy by [the Board] because of budgetary considerations.” That letter informed the teacher that she would be afforded a hearing regarding the proposed transfer if she requested one within 15 days of receipt of the letter.
 

 In separate filings, the teacher requested a hearing before the Board on her “mandatory transfer from [her] job as School Improvement Specialist” and on the “partial cancellation of employment.” The Board held a hearing on June 2, 2008, after which the teacher was notified on June 9, 2008, that the Board had upheld the superintendent’s recommendation that the teacher’s employment contract be partially canceled (and, thus, that the teacher’s transfer be upheld). The teacher was also notified that she could seek review of that decision by filing a written notice of appeal to a hearing officer. The teacher timely sought such review. After an evi-dentiary hearing, at which witnesses for the Board and the teacher testified and exhibits were admitted into evidence, the hearing officer issued a decision determining (a) that the Board had violated Ala. Code 1975, § 16-24-12, which pertains to automatic renewal of a teacher’s employment for an ensuing school year “at the same salary” absent notice to the contrary before the end of the preceding school year; and (b) that the teacher had attained secondary tenure as a school improvement specialist on the day after the second anniversary of when she was hired as a school improvement specialist. Based upon those conclusions, the hearing officer purported to “den[y]” the proposed partial cancellation of the teacher’s employment contract.
 

 The Board sought review of the hearing officer’s decision pursuant to Ala.Code 1975, § 16-24-10(b). After receiving submissions from the parties, we determined that the Board’s appeal presented “special and important reasons” that warranted appellate review under that statute, and we directed the parties to submit briefs in advance of the submission of the case for decision. Upon review of the full record
 
 *343
 
 and applicable AJabama law, we conclude that the hearing officer erred, and we reverse that decision and remand the cause with instructions.
 

 As we have noted, at the time the teacher was employed as a school improvement specialist on June 19, 2006, she had earned tenure
 
 as a teacher.
 
 Under previous Alabama cases, the teacher’s “promotion” to the specialist position, which would appear to fall within the expansive construction of the term “supervisor” espoused by the Alabama Supreme Court in
 
 Ex parte Oden,
 
 495 So.2d at 666-67, arguably started the three-year employment period after which the teacher would properly have been deemed “tenured” as a “supervisor,” but that promotion did not affect her rights to a hearing with respect to a
 
 transfer
 
 from her supervisory position with the Board’s central administration back to a teaching position in one of the Board’s schools.
 
 See
 
 Ala.Code 1975, § 16-24-5 et seq. As we stated in
 
 Smith v. Alabama State Tenure Commission,
 
 430 So.2d 877, 879-80 (Ala.Civ.App.1982),
 
 aff'd,
 
 430 So.2d 880 (Ala.1983):
 

 “This court agrees that the Tenure Act grants to teachers a property interest which, when perfected, is entitled to constitutional due process protection. However, the right to minimum due process should not limit additional rights granted by the tenure law which may exceed minimum due process. We believe §§ 16-24-5, -6, -7 provide hearing rights to any ‘teacher’ who has attained continuing service status under § 16— 24-2(a). Having once attained continuing service status as a ‘teacher,’ all of the hearing rights as to transfer provided by the Tenure Act become available. § 16-24-5. Section 16-24-2(b) states that promotion to principal or supervisor ‘shall in no way jeopardize the continuing service status of the teacher as an instructor’. It therefore appears to follow that an instructor (teacher) with continuing service status, promoted to principal or supervisor, is entitled to a hearing when given notice of transfer or demotion. The matters to be heard are set out in § 16-24-5. Included therein would be the issue of whether the teacher had attained tenure as a principal or supervisor; i.e., was the transfer with loss of status?
 

 “We consider, therefore, that Smith having tenure as a ‘teacher’ (instructor), though without property rights as a supervisor and thus no due process rights requiring a hearing upon his demotion, nevertheless had statutory rights to a hearing by the Board of Education upon notice of transfer and demotion.”
 

 Thus, in this case, the Board was not entitled under the Teacher Tenure Act to simply terminate the teacher’s current employment and reassign the teacher unilaterally to a teaching position; rather, it was required to afford the teacher the right to a pre-transfer hearing before doing so. We note, however, that although the teacher’s hearing rights are properly referable to the provisions of the Teacher Tenure Act pertaining to transfers, there is also authority for the proposition that a prospective change in the employment conditions of a person entitled to tenure as either a teacher or a supervisor under § 16-24-2 amounts to a “partial cancellation” of that person’s employment contract.
 
 See Mason v. Huntsville City Bd. of Educ.,
 
 591 So.2d 860, 862 (Ala.Civ.App.1991) (in which an administrator’s decision to direct a tenured principal to work an extra month as a summer-school coordinator was deemed reviewable as either a transfer or a partial cancellation of a former employment contract). Further, there is also Alabama authority for the proposition that even a nonrenewal of a nontenured educator’s employment may
 
 *344
 
 entitle that educator to due-process rights if the nonrenewal has a stigmatizing effect or injures the educator’s prospects for future employment.
 
 Foster v. Blount County Bd. of Educ.,
 
 340 So.2d 751, 752 (Ala.1976).
 

 It appears that, based upon the existence of those parallel lines of legal authority and the prospect that
 
 not
 
 affording the teacher a full hearing on the termination of her central-office employment pursuant to the RIF would be deemed a denial of due process, the Board wished to accomplish its RIF as it applied to the teacher without denying any rights the teacher might have had to a hearing; therefore, it proceeded in parallel fashion to treat the RIF as it applied to the teacher as
 
 both
 
 a transfer
 
 and
 
 a partial cancellation. As the hearing officer noted in his order, however, the Board need not have done so: the proposed “partial cancellation” was expressly stated to be effective
 
 for the 2008-09 school year,
 
 indicating a planned
 
 nonrenewal
 
 of the teacher’s school-improvement-specialist employment rather than a proposed mid-year termination thereof. That said, we note that, under Alabama law, “proceedings of school boards are usually kept by those not versed in the law and are more or less informal in character, and should not be given a narrow and technical construction”; further, “the records and proceedings of such boards ... should be construed in such manner as to give effect to the manifest intention of the members.”
 
 Holcombe v. County Bd. of Educ. of Marion County,
 
 242 Ala. 20, 23, 4 So.2d 503, 506 (1941).
 

 Nonetheless, that the Board elected (although erroneously) to treat the RIF as it applied to the teacher as a “partial cancellation” was, to the hearing officer, crucial: he opined that “[i]t makes little sense to provide tenured rights to a non-tenured employee and allow that employee to contest a contract cancellation when tenure for the position did not even exist.” To the contrary, the Board’s effort to effectuate the RIF by moving the teacher from the central office back to a classroom position was unquestionably an action that triggered the right to a pre-transfer hearing upon request under the legal principles we have set forth.
 

 That the Board elected to use two different forms of notice to inform the teacher of her rights under the Teacher Tenure Act to a hearing (and, subsequently, of her rights to administrative review by the hearing officer) is in no way indicative of an intent to confer a second level of tenure upon the teacher, and the hearing officer, by effectively conferring such tenure by applying a virtual estoppel doctrine against the Board, acted outside the scope of the Teacher Tenure Act.
 
 See Madison County Bd. of Educ. v. Wilson,
 
 984 So.2d 1153, 1160 (Ala.Civ.App.2006) (hearing officer in teacher-tenure case may not deviate from existing Alabama law),
 
 aff'd,
 
 984 So.2d 1161 (Ala.2007). Rather, because the teacher was statutorily entitled to a hearing only as to the proposed transfer, and not the nonrenewal, the hearing officer’s proper scope of review under the Teacher Tenure Act was to determine “whether the evidence was insufficient for the board to take the action, whether such action was taken for political or personal reasons, or whether such action was arbitrarily unjust.” Ala.Code 1975, § 16-24-7. The hearing officer concluded that the Board had adduced substantial evidence demonstrating that its RIF as it applied to the teacher was neither politically motivated nor arbitrary, and there is no real dispute that the Board had valid reasons for seeking to transfer the teacher from her central-office position.
 

 
 *345
 
 We likewise conclude that the hearing officer erroneously concluded that the Board had reemployed the teacher as a school improvement specialist by purportedly failing to provide “notice in writing” to the contrary in accordance with Ala. Code 1975, § 16-24-12. Rather, the record indicates that the Board clearly and unambiguously indicated its intent, well before the end of the 2007-08 school year, not to retain the teacher in her current position in the central office. The teacher was afforded a full and fair opportunity to contest the appropriateness of that decision before the Board, but the Board did not alter its intent. Although the teacher’s tenured status as a teacher precluded the Board from fully terminating her employment without cause under -the Teacher Tenure Act, the Board did adequately disclose that the teacher would not be retained in her administrative position for the 2008-09 school year in a sufficient manner to comply with § 16-24-12. Under the Teacher Tenure Act, the giving of notice to an education employee that is “adequate to serve its intended purpose,”
 
 ie.,
 
 to convey an intent not to rehire a probationary employee for the succeeding year, will be given effect notwithstanding a contention that the pertinent school board should be estopped to deny reemployment.
 
 Hembree v. Jefferson County Bd. of Educ.,
 
 337 So.2d 9,11 (Ala.Civ.App.1976).
 

 In summary, in effectuating notice of its RIF as it applied to the teacher for the 2008-09 school year before the end of the 2007-08 school year, the Board substantially complied with the provisions of the Teacher Tenure Act that applied to the teacher’s particular employment situation, ie., having attained tenured status as a teacher but not as a supervisor. The notices sent to the teacher clearly afforded her the precise transfer-review remedies permitted under the Teacher Tenure Act to those teachers who have yet to attain second-level tenure, although the notices did not perfectly observe the distinction between “partial cancellation” and nonre-newal. We conclude that the hearing officer erroneously adopted a “narrow and technical construction” of the Board’s notices in concluding that affording the teacher a right to a review hearing in these circumstances amounted to a conferring of second-level tenure by estoppel. The decision of the hearing officer is therefore reversed, and the cause is remanded for the entry of an order allowing the Board to effectuate forthwith the transfer of the teacher from her central-office position.
 

 REVERSED AND REMANDED WITH INSTRUCTIONS.
 

 THOMPSON, P.J., and THOMAS, J., concur.
 

 BRYAN and MOORE, JJ., concur in the result, without writings.